Raquel GUAJARDO, Appellant,

v.

The STATE of Texas, Appellee.

No. 14–97–00552–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

Aug. 19, 1999.

Laura Elizalde, Houston, for appellants.

Alan Curry, Houston, for appellees.

Panel consists of Justices YATES, LEE and DRAUGHN.*

O P I N I O N

NORMAN LEE, Justice.

Appellant, Raquel Guarjardo, was indicted in 1992 for securing the execution of a document by deception. The state alleged that appellant had wrongly obtained welfare payments as a result of her deception. Appellant was not arrested until nearly five years later in 1997. She filed a motion to dismiss based on a violation of her right to a speedy trial. The trial court denied the motion and the appellant pleaded guilty. Punishment was assessed at four years community service and restitution. Appellant now appeals the trial court's denial of her motion to dismiss. We affirm.

On November 8, 1991 the appellant and her husband were interviewed by an employee of the Texas Department of Hu-

---

* Senior Justices Norman Lee and Joe L. Draughn sitting by assignment.

man Services ("TDHS"). At that interview, the appellant was informed that she was being investigated for violations of TDHS rules and regulations. The appellant gave a statement at the interview admitting that she intentionally did not inform the TDHS when she had obtained employment because she wanted to receive the same level of aid as she had prior to being employed. Nine months later, on July 8, 1992, appellant was indicted for securing the execution of a document by deception. A warrant was issued for her arrest on the following day. On September 30, 1992, the Harris County Sheriff's Office sent a letter to the wrong address directing appellant to report to the TDHS. Understandably, appellant never reported because she never received the letter. No other attempts were made to arrest the appellant until 1997. On February 3, 1997 a new search program allowed the Sheriff's Department to discover appellant's place of employment. Three days later appellant was arrested. Prior to pleading guilty, the trial court denied appellant's motion to dismiss based on the violation of her right to a speedy trial. In her sole point of error, appellant asserts that the trial court erred in denying her motion to dismiss.[1]

 The right to a speedy trial is guaranteed by the Sixth Amendment to the United States Constitution as applied through the Fourteenth Amendment. *See Klopfer v. North Carolina*, 386 U.S. 213, 222–23, 87 S.Ct. 988, 18 L.Ed.2d 1 (1967). In Texas, the right to a speedy trial is assured by article I, section 10 of the Texas Constitution and article 1.05 of the Texas Code of Criminal Procedure. In determining whether an accused was denied her right to a speedy trial, we apply the balancing test set out by the United States Supreme Court in *Barker v. Wingo*, 407 U.S. 514, 530–33, 92 S.Ct. 2182, 33

L.Ed.2d 101 (1972). The factors we consider are: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of the right; and (4) the prejudice to the defendant resulting from the delay. *See id.*

### Length of the Delay

 The length of delay is measured from the time the defendant is formally accused or arrested until the time of trial. *See United States v. Marion*, 404 U.S. 307, 320, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971). There is no per se length of delay that automatically constitutes a violation of the right to a speedy trial. *See Hull v. State*, 699 S.W.2d 220, 221 (Tex.Crim.App.1985). In this case, appellant was originally indicted in 1992, and she was not arrested or tried until nearly five years later. The state concedes and there is little doubt that such a delay is more than sufficient to require us to consider the remaining three factors of the *Barker* test.

### Reason for the Delay

 When addressing the reason for the delay, we consider whether the delay was due to deliberate attempts to hamper the defense, justified circumstances such as missing witnesses, or more neutral reasons such as overcrowded court dockets. *See Crowder v. State*, 812 S.W.2d 63, 66 (Tex.App.—Houston [14th Dist.] 1991, pet. ref'd). Initially, the delay in arresting appellant appears to be the result of the Sheriff's Department using the wrong address to try and locate appellant. When appellant was indicted she lived at 1529 Godwin, Houston, Texas. The indictment returned against the appellant showed 1529 Godwin as her address, as did the records of the TDHS. However, the letter sent by the Sheriff's office to the appellant was addressed to 1526½ Godwin. Appel-

---

1. Appellant presented a second point of error in which she asserted that her "plea of guilty was jurisdictionally defective, where appellant entered her plea with the intent to obtain full and complete appellate review of her pretrial motion to suppress, and where this court decides it cannot reach the merits of the motion." Because we do address the merits of appellant's motion to suppress, we need not address appellant's second point of error.

lant never responded. The record also suggests that in addition to the appellant's address, the TDHS was also in possession of the name and location of her husband's employer. Despite this fact, Appellant's husband was never contacted in an effort to locate appellant. Finally, it appears that after the initial attempt to contact the appellant by letter in 1992, neither the TDHS nor the Sheriffs Department made any documented attempts to locate the appellant. Eventually, five years later, a new computer system that allowed the Sheriff's Department to search for individuals using their social security numbers revealed the identity of appellant's employer. Following the discovery of appellant's place of employment, she was arrested soon thereafter.

At best, the TDHS and the Sheriff's Department were grossly negligent in their efforts to locate the appellant. While we do not believe that their actions were done as a deliberate attempt to hamper the appellant's defense, their actions do not fall very far below this level, and they are certainly more than mere negligence. Therefore, this second *Barker* factor considering the reason for the delay weighs heavily against the state.

### Appellant's Assertion of her Right to a Speedy Trial

A defendant's assertion of her speedy trial right is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right. *See Crowder,* 812 S.W.2d at 67. However, a failure to assert that right will make it difficult to prove that he was denied a speedy trial. *See id.*

We begin by noting that appellant's first opportunity to assert her right to a speedy trial was immediately following her arrest in February 1997. Prior to that time appellant had no notice that she had been indicted. The state suggests that because she knew she was under investigation from the 1991 interview with the TDHS, that she should have known she would be pros-

ecuted and therefore come forward to assert her right to a speedy trial. That argument, however, is wholly without merit.

Appellant was arrested on February 6, 1997. Appellant filed her Motion to Dismiss on April 15, 1997. The state asserts that she did not timely assert her right to a speedy trial because she "made a motion to dismiss over two months after having been arrested." This argument by the State is disengenuious and also without merit. Considering that the state waited almost five years to arrest the appellant, her assertion of her right to a speedy trial little more than two months after being arrested is more than timely. Therefore, this third *Barker* factor considering the appellant's assertion of her right to a speedy trial weighs heavily in favor of the appellant.

### Prejudice to the Appellant

The final and most important factor that we must examine in determining whether the appellant was denied her right to a speedy trial, is what prejudice the appellant has suffered as a result of the delay. We recognize that, in some cases, the delay of trial may be so excessive as to be presumptively prejudicial. *See Doggett v. United States,* 505 U.S. 647, 654–57, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992) (delay of eight and one-half years was presumptively prejudicial). There is little doubt that the nearly five year delay attributable to the State in the instant case is so long that it raises such a presumption. Even in the case of presumptive prejudice, however, the length of the delay alone will not establish a right to dismissal. *See id.* While the State's egregious persistence in failing to prosecute the appellant may be sufficient to warrant relief even without a showing of actual prejudice, the appellant must nevertheless make some showing that she has been prejudiced by the delay. *See id.* at 655, 112 S.Ct. 2686. Once the defendant makes this prima facie showing of prejudice, the

burden then shifts to the State to refute that prejudice. *See Ex parte McKenzie,* 491 S.W.2d 122, 123 (Tex.Crim.App.1973).

The right to a speedy trial is designed to protect three discernable interests: (1) prevention of oppressive pretrial incarceration; (2) minimization of the accused's anxiety and concern; and (3) limitation of the possibility that the accused's defense will be impaired. *See Barker,* 407 U.S. at 532, 92 S.Ct. 2182. In the present case, the appellant was never incarcerated prior to her trial, and the record demonstrates that appellant never knew that she had been indicted prior to finally being served with the indictment in 1997. As for the final factor of impairment of her defense, appellant essentially concedes that the delay did not impair any defense that she would have asserted during the guilt phase of the trial. Instead, she contends that she suffered prejudice because she was unable to produce witnesses who could testify as to her financial situation at the time she committed the offense. Appellant asserts that she committed the offense because she needed the additional aid, and that testimony to that effect would have been highly relevant to punishment.

Appellant's argument that she is unable to locate witnesses to testify as to her financial situation is not convincing. Appellant and her husband were both available to testify about appellant's need for the extra money. Furthermore, as part of the evidence, the trial court had the written confession of the appellant in which she states that she made false statements because she needed the aid and what she made was not enough. Finally, the appellant cannot point to any specific witness that she is unable to locate, and makes no showing of testimony that may have been lost due to the states delay in prosecuting the case. Therefore, we find that the factor of prejudice to the appellant weighs in favor of the state.

## Balancing Test

We must now engage in a balancing process in which none of the four factors alone is either necessary or sufficient to a finding of deprivation of the right to a speedy trial. *See Crowder,* 812 S.W.2d at 68. There is no doubt the first three *Barker* factors weigh in favor of the appellant. Furthermore, the nearly five year delay gives rise to a presumption that the delay was prejudicial. That presumption, however, is rebutted by the fact that the appellant has failed to demonstrate that she has suffered any prejudice as a result of the delay, thereby leaving the final factor in favor of the state. After considering all the factors, we find that lack of *any* prejudice to the appellant from the delay outweighs the first three factors of the *Barker* test. Accordingly, we hold that the appellant's right to a speedy trial was not violated.

The judgment is affirmed.