COURT OF APPEALS

                                       SECOND DISTRICT OF TEXAS

                                                   FORT WORTH

 

 

                                        NO.
2-08-258-CR

 

 

QUINCY PAUL JONES                                                          APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

           FROM
THE 297TH DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

MEMORANDUM OPINION[1] ON APPELLANT=S PETITION FOR
DISCRETIONARY REVIEW 

 

                                              ------------








Pursuant
to Texas Rule of Appellate Procedure 50, we withdraw our November 12, 2009
opinion and judgment and substitute the following.  See Tex. R.
App. P. 50.  We write to address appellant Quincy Paul Jones=s claim
on petition for discretionary review that, in our prejudice analysis of Jones=s speedy
trial claim, we erroneously refused to consider his argument that the delay in
his trial resulted in an increased punishment range.

I.  Introduction

Appellant
Quincy Paul Jones appeals his conviction for two counts of sexual assault of a
child.  In two points, Jones argues that
the trial court erred by denying his motion to dismiss for violation of his
right to a speedy trial and by overruling his objection to the voluntariness of
his confession.  We will affirm. 

II.  Factual and Procedural Background








In 2004,
Jones lived with his then-girlfriend M.B., their daughter, and M.B.=s two
other children in Tarrant County.  Jones
later moved to Muncie, Indiana.  In
December 2005, over a year after Jones moved out, M.B.=s
fifteen-year-old daughter K.L. told M.B. that Jones had sexually assaulted her
on multiple occasions when he lived with them. 
M.B. called the Mansfield police department.  Mansfield police obtained a warrant for Jones=s arrest
and contacted the police department in Muncie, Indiana.  Muncie child abuse investigator Sergeant
Darrin Clark went to Jones=s last
known address, and when no one answered, he left his business card.  He also contacted Jones=s
probation officer Heather Pierce and explained that he needed to speak with
Jones regarding some allegations against him in Texas.  Pierce told Jones that he Aneeded
to cooperate with the Muncie Police Department.@  Jones complied, and during an interview at
the Muncie police station on February 14, 2006, he admitted to the sexual
assault and was arrested.  

Jones
remained in jail from the time of his arrest on February 14, 2006, until his
jury trial on July 15, 2008.  Seven months
after his arrest, and although represented by court-appointed counsel, Jones
filed a pro se application for writ of habeas corpus, claiming that his
constitutional right to a speedy trial had been violated.  

Trial
was then set for October 24, 2006, November 6, 2006, March 5, 2007, and June 4,
2007.  Although neither the State nor
Jones filed motions for continuances or announced not ready for trial, trial
was not held on any of those dates.   

On June
4, 2007, the trial court allowed Jones=s
appointed attorney to withdraw due to a conflict with Jones, and four days
later, the court appointed new counsel for Jones.  Trial was then set for August 20, 2007,
November 5, 2007, and February 4, 2008, but trial was not held on those
dates.  Again, neither the State nor
Jones filed motions for continuances or announced not ready for trial.   








On June
5, 2008, Jones filed a pro se APlea of
M[ercy],@ in
which he asked the court for Ahelp in
speedy completion@ of his trial.  Approximately one month later, and
twenty-nine months after Jones=s
arrest, his attorney filed a motion to dismiss for failure to grant a speedy
trial.   

Jury
selection began four days later on July 15, 2008.  The following day, the trial court conducted
a pre-trial hearing on Jones=s motion
to dismiss and denied the motion.  The
jury ultimately found Jones guilty of both counts and assessed Jones=s
punishment for each count at thirty-five years=
imprisonment and a $6,000.00 fine.  The
trial court ordered the sentences to run concurrently. 

III.  Speedy Trial

In his
first point, Jones argues that the trial court=s denial
of his motion to dismiss violated his right to a speedy trial under the United
States and Texas Constitutions. 

A.  The
Right to a Speedy Trial








The
Sixth Amendment to the United States Constitution and article 1, section 10 of
the Texas Constitution guarantee an accused the right to a speedy trial.  See U.S. Const. amend. VI; Tex. Const.
art. I, ' 10; see
also Zamorano v. State, 84 S.W.3d 643, 647 (Tex. Crim. App. 2002); Orand
v. State, 254 S.W.3d 560, 565 (Tex. App.CFort
Worth 2008, pet. ref=d).  Texas courts analyze claims of a denial of
this right, both under the federal and state constitutions, the same.  See Harris v. State, 827 S.W.2d 949,
956 (Tex. Crim. App.), cert. denied, 506 U.S. 942 (1992).  In Barker v. Wingo, the United States
Supreme Court qualified the literal sweep of the right to a speedy trial by
analyzing the constitutional question in terms of four specific factors:

(1)    whether the delay before
trial was uncommonly long;

 

(2)    whether
the government or the criminal defendant is more to blame for the delay;

 

(3)    whether
in due course, the defendant asserted his right to a speedy trial; and

 

(4)    whether the defendant
suffered prejudice as a result of the         delay.


 

407 U.S. 514, 530, 92 S. Ct.
2182, 2192 (1972).  Under Barker,
courts must analyze federal constitutional speedy trial claims by first
weighing the strength of each of the above factors and then balancing their
relative weights in light of the conduct of both the prosecution and the
defendant.  Zamorano, 84 S.W.3d at
648.  None of the four factors is either
a necessary or sufficient condition to the finding of a deprivation of the
right to a speedy trial; instead, all must be considered together along with
any other relevant circumstances.  Id.  No one factor possesses Atalismanic
qualities@; thus, courts must Aengage
in a difficult and sensitive balancing process@ in each
individual case.  Id. (quoting Barker,
407 U.S. at 533, 92 S. Ct. at 2193).








B. 
Standard of Review

In reviewing
the trial court=s ruling on a speedy trial
claim, we apply a bifurcated standard of review: an abuse of discretion
standard for the factual components and a de novo standard for the legal
components.  Id.  Review of the individual Barker
factors necessarily involves factual determinations and legal conclusions, but
the balancing test as a whole is a purely legal question.  Cantu v. State, 253 S.W.3d 273, 282
(Tex. Crim. App. 2008). 

Under
this standard, we defer not only to a trial judge=s
resolution of disputed facts, but also to the trial judge=s right
to draw reasonable inferences from those facts. 
Id. at 281.  In assessing
the evidence at a speedy trial hearing, the trial judge may completely
disregard a witness=s testimony, based on
credibility and demeanor evaluations, even if that testimony is uncontroverted.  Id. 
The trial judge may disbelieve any evidence so long as there is a
reasonable and articulable basis for doing so. 
Id.  And all of the
evidence must be viewed in the light most favorable to the trial judge=s
ultimate ruling.  Id.  

C. 
Analysis of the Barker Factors

1.  Length
of Delay








The
length of delay is a Atriggering mechanism@ for
analysis of the other Barker factors. 
Barker, 407 U.S. at 530B32, 92
S. Ct. at 2192B93; Zamorano, 84 S.W.3d
at 648.  Depending on the nature of the
charges, a postaccusation delay of about one year is Apresumptively
prejudicial@ for purposes of the
length-of-delay factor.  Doggett v.
United States, 505 U.S. 647, 652 n.1, 112 S. Ct. 2686, 2691 n.1
(1992).  If the accused shows that the
interval between accusation and trial has crossed the threshold dividing Aordinary@ from Apresumptively
prejudicial@ delay, then the court must consider,
as one factor among several, the extent to which that delay stretches beyond
the bare minimum needed to trigger judicial examination of the claim.  Zamorano, 84 S.W.3d at 649 (quoting Doggett,
505 U.S. at 652, 112 S. Ct. at 2690B91).  This second inquiry is significant to the
speedy trial analysis because the Apresumption
that pretrial delay has prejudiced the accused intensifies over time.@  Id. 









The
State here concedes that the twenty-nine-month delay between Jones=s arrest
and trial weighs in Jones=s favor and triggers an analysis
of the remaining Barker factors. 
Furthermore, because the delay stretched well over twice the length of
time needed to trigger the inquiry, this factor weighs heavily in favor of
Jones.  See, e.g., Shaw v.
State, 117 S.W.3d 883, 890 (Tex. Crim. App. 2003) (holding delay of
thirty-eight months weighed heavily in appellant=s
favor);  Rodriquez v. State, 227
S.W.3d 842, 844 (Tex. App.CAmarillo
2007, no pet.) (holding delay of thirty-two months between arrest and trial
weighed heavily against the State).

2.  Reasons for the Delay

The
second factorCreasons for the delayCseeks to
ensure that courts do not simply concentrate on the sheer passage of time
without taking into account the reasons underlying the delay.  See Rashad v. Walsh, 300 F.3d 27, 34
(1st Cir. 2002), cert. denied, 537 U.S. 1236 (2003). Under Barker,
Adifferent
weights should be assigned to different reasons@ for the
delay.  407 U.S. at 531, 92 S. Ct.
at 2192.  The inquiry into causation
involves a sliding scale: deliberately dilatory tactics must be weighed more
heavily against the State than periods of delay resulting from negligence.  Id.  Furthermore, valid reasons for delay should be
weighed only slightly, if at all, against the State.   State v. Munoz, 991 S.W.2d 818, 824
(Tex. Crim. App. 1999). 








Like the
first factor, the State also concedes that this factor weighs in Jones=s favor,
although Aonly >slightly.=@  At the hearing on Jones=s motion
to dismiss, the trial court=s court
coordinator testified that the State had never failed to announce ready for
trial at any of the trial settings or moved for a continuance.  She explained that the trial court is a busy
court and had approximately 1,600 cases pending at that time.  The court coordinator could not testify as to
why Jones=s trial had been reset so many
times but said it was conceivable that it was reset because other defendants
could have been in custody longer than Jones, thus giving their cases
preference over his.  

Although
a neutral reason such as an overcrowded docket weighs less heavily against the
State, it should nevertheless be considered because the ultimate responsibility
for bringing cases to trial in a timely manner rests with the government.   Barker, 407 U.S. at 531, 92 S. Ct. at
2192; Parkerson v. State, 942 S.W.2d 789, 791 (Tex. App.CFort
Worth 1997, no writ).  However, because
no evidence exists here that the State used deliberately dilatory tactics, we
agree with the State that this factor weighs only slightly against the State.  See, e.g., Murphy v. State, 280
S.W.3d 445, 453 (Tex. App.CFort
Worth 2009, pet. ref=d) (holding second factor did
not weigh heavily against State when no evidence existed that State used
purposeful dilatory tactics).

3. 
Assertion of the Right








We next
consider the extent to which Jones affirmatively sought a speedy trial.  Barker, 407 U.S. at 531B32, 92
S. Ct. at 2192.  The nature of the speedy
trial right makes it Aimpossible to pinpoint a precise
time in the process when the right must be asserted or waived, but that fact
does not argue for placing the burden of protecting the right solely on
defendants.@ 
Id. at 527, 92 S. Ct. at 2190. 
The right to a speedy trial Ais
constitutionally guaranteed and, as such, is not to be honored only for the
vigilant and the knowledgeable.@  Id. at 527 n.27, 92 S. Ct. at 2190
n.27 (quoting Hodges v. United States, 408 F.2d 543, 551 (8th Cir.
1969)).   








Whether
and how a defendant asserts this right is closely related to the other three
factors because the strength of the defendant=s
efforts will be shaped by them.  Id.
at 531, 92 S. Ct. at 2192.  Filing for a
dismissal instead of a speedy trial generally weakens a speedy trial claim
because it may show a desire to have no trial instead of a speedy one.  Cantu, 253 S.W.3d at 283.          In
this case, Jones first asserted his right to a speedy trial approximately six
months after he was arrested by filing an application for writ of habeas
corpus.  The State argues that the
application for writ of habeas corpus is not Athe
proper starting point from which to measure [Jones=s]
assertion of his speedy trial right@ because
Jones attached it to the end of a motion to reduce bail and because he asserted
the violation of his right to a speedy trial as his third and final ground for
habeas reliefCAburied
in the last substantive paragraph of this eleven-page bail reduction motion.@[2]   

 

Nevertheless,
Jones specifically alleged in that application, 

I have been incarcerated for over 200 days without a trial date or
trial being conducted and request a hearing to hear my right to be released on
bail . . . .  My constitutional right to
a speedy trial [has] been violated.

 

Although he did not directly
request a speedy trial, he asserted a violation of his right to a speedy trial,
and he did not request dismissal for failure to grant a speedy trial.  See Cantu, 253 S.W.3d at 283; Phillips
v. State, 650 S.W.2d 396, 401 (Tex. Crim. App. 1983) (A[A]
defendant=s motivation in asking for
dismissal rather than a prompt trial is clearly relevant, and may sometimes
attenuate the strength of his claim.@).          








Over
twenty months later, Jones again asserted his right to a speedy trial in his
pro se APlea of
M[ercy],@ in
which he stated that he was Anot sure@ if his
right to a speedy trial had been waived by his appointed counsel or by himself
and that he would never waive that right and asked the court for Ahelp in
speedy completion.@ 
Trial was ultimately set for the following month, providing some
evidence that the trial court considered his pro se motion.  See Robinson, 240 S.W.3d at 923.  Assuming the trial court considered this
motion, thus making it subject to review, Jones did not request a hearing on
his request for a speedy trial.  See
Cook v. State, 741 S.W.2d 928, 940 (Tex. Crim. App. 1987) (weighing third Barker
factor against appellant because no evidence other than two motions for speedy
trial filed with court showed that appellant asserted his right to a speedy
trial by requesting hearings to present evidence on the matter), vacated and
remanded on other grounds, 488 U.S. 807, 109 S. Ct. 39 (1988).  Thus, although Jones=s second
pro se motion shows that he attempted to assert his right to a speedy trial, it
tips the scales only slightly in his favor.[3]









Finally,
the motion to dismiss, filed by Jones=s
attorney twenty-nine months after Jones=s
arrest, shows a desire to have no trial instead of a speedy trial and weakens
Jones=s
case.  See Cantu, 253
S.W.3d at 283.  

Jones
submits that the third Barker factor weighs in his favor but concedes
that it does not weigh Aas heavily as it would had he
repeatedly asserted his right to speedy trial.@  We agree. 
Considering the two pro se filings, filed six months and twenty-seven
months after Jones=s arrest, and the motion to
dismiss filed twenty-nine months after his arrest, we weigh this factor at
least slightly against the State and in favor of Jones.

   4.  Prejudice








The
final factor of Aprejudice@ must be
assessed in light of the interests the speedy trial right was intended to
protect.  See Barker, 407 U.S. at
532, 92 S. Ct. at 2193.  Those interests
are (1) to prevent oppressive pretrial incarceration, (2) to minimize the accused=s
anxiety and concern, and (3) to limit the possibility the defense will be
impaired.  Id.  Of these interests, the third is the most
serious because the inability of a defendant to adequately prepare his case
skews the fairness of the entire system. 
Id.; Doggett, 505 U.S. at 654, 112 S. Ct. at 2692; Dragoo
v. State, 96 S.W.3d 308, 315 (Tex. Crim. App. 2003).   

In some
cases, the delay may be so excessive as to be presumptively prejudicial.  Guajardo v. State, 999 S.W.2d 566, 570
(Tex. App.CHouston [14th Dist.] 1999, pet.
ref=d); see
Doggett, 505 U.S. at 658, 112 S. Ct. at 2694.  Courts have held that delays of five years
and longer are presumptively prejudicial under the fourth Barker factor.
See Guajardo, 999 S.W.2d at 570 (five-year delay raises presumption of
prejudice); see also Doggett, 505 U.S. at 658, 112 S. Ct. at 2694 (eight
and one‑half years was presumptively prejudicial); Orand, 254
S.W.3d at 570  (fourteen-year delay was
presumptively prejudicial).  Yet even
when the delay is presumptively prejudicial, the defendant must nevertheless
show that he has, in fact, been prejudiced. 
Guajardo, 999 S.W.2d at 570; see Doggett, 505 U.S.
at 655B56, 112
S. Ct. at 2693.  

A
showing of actual prejudice is not required; however, a defendant must make a
prima facie showing of prejudice caused by the delay of the trial.  Munoz, 991 S.W.2d at 826.  Once the defendant has made such a showing,
the burden shifts to the State.  Guajardo,
999 S.W.2d at 570B71. 








Although
the delay in the present case triggers a speedy trial analysis, it is not long
enough for Jones to have suffered presumptive prejudice.  See Compass v. State, No.  02‑06‑00075‑CR, 2007 WL
2067733, at *3 n.28 (Tex. App.CFort
Worth July 19, 2007, no pet.) (mem. op., not designated for publication) (AWe
decline to hold that a twenty‑nine month delay is presumptively
prejudicial.@); see also Clarke v. State,
928 S.W.2d 709, 717 (Tex. App.CFort
Worth 1996, pet. ref=d) (finding no presumptive
prejudice where appellant retried on punishment two years and five months after
Supreme Court denied certiorari and five months after appellant filed motion
for speedy retrial); Sanders v. State, 978 S.W.2d 597, 605 (Tex. App.CTyler
1997, pet. ref=d) (finding nineteen‑month
delay not presumptively prejudicial).








Jones
argues that he was prejudiced for three reasons.[4]  He first argues that he suffered prejudice
because the delay resulted in an increased punishment range.  Over two years after his arrest, the State
filed its notice of intent to seek an enhancement finding based on a prior
felony conviction from 2001, which increased the punishment range from between
two and twenty years= imprisonment to between five
and ninety-nine years= imprisonment.[5]  But the prior conviction used to enhance
Jones=s punishment
occurred years before he was arrested for this offense.  Thus, the delay did not create an opportunity
for an increased punishment rangeCthe
possibility that Jones could face increased punishment existed regardless of
any delay in his trial.  See Tex.
Penal Code Ann. ' 12.42(b).  Cf. Clarke, 928 S.W.2d at 716 (finding
some prejudice when convictions for two extraneous offenses became final during
delay and thus became admissible at trial under prior version of code of
criminal procedure article 37.07).  








 
     Jones also argues that he was
unable to locate and secure witnesses Awho
possibly could have testified on [his] behalf@ due to
the delay.  At the motion to dismiss
hearing, Jones=s court-appointed investigator
testified that in October 2007, Jones provided him with a list of four
potential witnesses.  The investigator
located only one of the individuals, and that person did not want to participate
in the trial.  To claim prejudice because
of a missing witness, a defendant must show that (1) the witness was
unavailable at the time of trial, (2) the witness=s
testimony would have been relevant and material, and (3) the defendant
exercised due diligence in attempting to locate the witness. Clarke, 928
S.W.2d at 716.  Jones has failed to show
what material information these witnesses would have provided.  See Palacios v. State, 225 S.W.3d 162,
169B70 (Tex.
App.CEl Paso
2005, pet. ref=d); Clarke, 928 S.W.2d at
716.  Consequently, he has failed to make
a prima facie showing that his defense was impaired by the absence of these
witnesses.

Finally,
Jones argues that the delay in his case caused him significant anxiety and
distress.  At the motion to dismiss
hearing, Jones explained his anxiety and concern regarding his pretrial
incarceration: AJust anxious, nervous, not being
able to sleep, eat, just stressing off and on day to day.  It=s been a
long road.@ 
Jones has failed to show that the anxiety he suffered either was
abnormal or caused his case prejudice.  See
Shaw, 117 S.W.3d at 890 (A[A]ppellant
offered no evidence to the trial court that the delay had caused him any
unusual anxiety or concern, i.e., any anxiety or concern beyond the level normally
associated with being charged with [the] crime.@).  








Jones
does not present this court, and did not present the trial court, with any
other argument regarding the prejudice‑to‑the‑defense factor.  Cf. Zamorano, 84 S.W.3d at
654 (noting, in prejudice analysis, defendant=s
testimony about undue anxiety, lost income, and missed work as a result of the
delay); Puckett v. State, 279 S.W.3d 434, 441 (Tex. App.CTexarkana
2009, no pet.) (finding prejudice where appellant showed witnesses with
relevant testimony were unavailable). 
Jones does not meet the presumptively prejudicial standard, and even
considering his oppressive pretrial incarceration, he has not made a prima
facie showing that he suffered anxiety or concern or that his defense was
impaired.  See Munoz, 991 S.W.2d
at 829 (holding prejudice was Aminimal@ where
defendant showed oppressive pretrial incarceration and anxiety but failed to
show defense was impaired by delay); Meyer v. State, 27 S.W.3d 644, 651
(Tex. App.CWaco 2000, pet. ref=d)
(finding minimal prejudice where appellant suffered Asome
oppressive pretrial incarceration and undue anxiety@ but did
not Amake
even a prima facie showing that his defense had been impaired@), abrogated
on other grounds by Robinson v. State, 240 S.W.3d 919 (Tex. Crim. App.
2007).

In
short, on this record, any prejudice to Jones was Aminimal.@ Munoz, 991
S.W.2d at 829; Meyer, 27 S.W.3d at 651. 
This factor weighs against finding Jones=s speedy
trial right was violated.

5. 
Balancing the Factors








Having
addressed the Barker factors, we must now balance them. The
twenty-nine-month delay between Jones=s arrest
and his trial weighs heavily against the State and in favor of Jones.  The second factorCreasons
for the delayCalso weighs against the State,
but only slightly because no evidence exists that the State used deliberately
dilatory tactics.  The third factorBassertion
of the rightCweighs slightly against the
State and in favor of Jones.  Finally,
any prejudice suffered by Jones was minimal. 
We hold that the weight of these factors, balanced together, supports
the trial judge=s ruling to deny Jones=s motion
to dismiss and that there was no violation of his right to a speedy trial. See
Palacios, 225 S.W.3d at 170 (finding no speedy trial violation when first
three factors weighed against State and fourth factor weighed heavily against
appellant); see also Russell v. State, 90 S.W.3d 865, 874B75 (Tex.
App.CSan
Antonio 2002, pet. denied) (finding no speedy trial violation when first three
factors weighed in appellant=s favor
and presumptive prejudice was rebutted by failure to demonstrate any
prejudice); Guajardo, 999 S.W.2d at 571 (same).  We overrule Jones=s first
point.

IV.  Motion to Suppress

In his
second point, Jones argues that the trial court erred by overruling his motion
to suppress his videotaped confession because his parole officer told him he
needed to cooperate with the police, rendering his confession involuntarily
given.  








A. 
Standard of Review








We
review a trial court=s ruling on a motion to suppress
evidence under a bifurcated standard of review. 
Amador v. State, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007); Guzman
v. State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).  In reviewing the trial court=s
decision, we do not engage in our own factual review.  Romero v. State, 800 S.W.2d 539, 543
(Tex. Crim. App. 1990); Best v. State, 118 S.W.3d 857, 861 (Tex. App.CFort
Worth 2003, no pet.).  The trial judge is
the sole trier of fact and judge of the credibility of the witnesses and the
weight to be given their testimony.  Wiede
v. State, 214 S.W.3d 17, 24B25 (Tex.
Crim. App. 2007); State v. Ross, 32 S.W.3d 853, 855 (Tex. Crim. App.
2000), modified on other grounds by State v. Cullen, 195 S.W.3d 696
(Tex. Crim. App. 2006).  Therefore, we
give almost total deference to the trial court=s
rulings on (1) questions of historical fact, even if the trial court=s
determination of those facts was not based on an evaluation of credibility and
demeanor, and (2) application‑of‑law‑to‑fact questions
that turn on an evaluation of credibility and demeanor.  Amador, 221 S.W.3d at 673; Montanez
v. State, 195 S.W.3d 101, 108B09 (Tex.
Crim. App. 2006); Johnson v. State, 68 S.W.3d 644, 652B53 (Tex.
Crim. App. 2002).  But when
application-of-law-to-fact questions do not turn on the credibility and
demeanor of the witnesses, we review the trial court=s
rulings on those questions de novo.  Amador,
221 S.W.3d at 673; Estrada v. State, 154 S.W.3d 604, 607 (Tex. Crim.
App. 2005); Johnson, 68 S.W.3d at 652B53.

Stated
another way, when reviewing the trial court=s ruling
on a motion to suppress, we must view the evidence in the light most favorable
to the trial court=s ruling.  Wiede, 214 S.W.3d at 24; State v.
Kelly, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006).  When the trial court makes explicit fact findings,
we determine whether the evidence, when viewed in the light most favorable to
the trial court=s ruling, supports those fact
findings.  Kelly, 204 S.W.3d at
818.  We then review the trial court=s legal
ruling de novo unless its explicit fact findings that are supported by the
record are also dispositive of the legal ruling.  Id. at 819.

B.  Law on
Voluntariness








The
statement of the accused may be used in evidence if it was freely and
voluntarily made without compulsion or persuasion.  Tex. Code Crim.  Proc. Ann. art. 38.21 (Vernon 2005).  In deciding whether a statement was
voluntary, we consider the totality of the circumstances in which the statement
was obtained.  Creager v. State,
952 S.W.2d 852, 855 (Tex. Crim. App. 1997); Reed v. State, 59 S.W.3d
278, 281 (Tex. App.CFort Worth 2001, pet. ref=d).  A confession is involuntary if circumstances
show that the defendant=s will was Aoverborne@ by
police coercion.  Creager, 952
S.W.2d at 856.  The defendant=s will
may be Aoverborne@ if the
record shows that there was Aofficial,
coercive conduct of such a nature@ that a
statement from the defendant was Aunlikely
to have been the product of an essentially free and unconstrained choice by its
maker.@  Alvarado v. State, 912 S.W.2d 199, 211

(Tex. Crim. App. 1995); Frank
v. State, 183 S.W.3d 63, 75 (Tex. App.CFort 

Worth 2005, pet. ref=d).  

C.  The
Voluntariness of Jones=s
Confession








Jones is
not complaining of the police officers= actions
prior to or during his videotaped confession; he complains only that his parole
officer=s
instruction to cooperate with the police investigation rendered his confession
involuntary.     At the suppression hearing, Heather Pierce testified that she was
Jones=s parole
officer in Muncie, Indiana and that Sergeant Clark had informed her that he was
conducting an investigation into certain allegations against Jones.  She testified that she had called Jones, had
explained that she did not know a lot about the allegation, and had told Jones
that he Aneeded
to cooperate with the Muncie Police Department.@  Pierce testified that Jones would not have
violated his parole if he had not cooperated, that she did not threaten him
that he would violate his parole if he did not cooperate, and that she did not
promise him anything in exchange for his cooperation.  On cross-examination, Pierce agreed that it
is a Agood
thing@ for a
parolee to do what a parole officer tells him to do. 

Jones
testified at the suppression hearing that Pierce had told him that he Aneeded
to go down [to the police station] and cooperate with them.@  He said that Pierce had given him a Adirect
order@ to talk
to police and that he had felt that if he did not cooperate with the police, he
would violate his parole.  He explained, AI felt
like I did not have a choice at the time because the way that she called me,
you know, she didn=t sound C she
just sound[ed] like it was a demand.@  On cross-examination, Jones testified that
Pierce did not tell him that he would violate his parole if he did not
cooperate with police and that she did not promise him anything in exchange for
his cooperation.  Jones also testified
that both Pierce and Sergeant Clark had told him that he was not going to be
arrested and that he thought he would go to the police station, tell his side
of the story, and Abe let go.@  He also stated that he went to the police
station Avoluntarily.@  








After
the hearing, the trial court entered oral and written findings of fact, finding
that Jones appeared voluntarily at the Muncie police department on February 14,
2006; that he freely, intelligently, knowingly, and voluntarily waived his
rights; and that he made his statement under voluntary conditions after waiving
his rights.  

Based on
the evidence provided at the suppression hearing, and giving deference to the
trial court=s evaluation of the facts, we
hold that the record supports the trial court=s ruling
and that the totality of the circumstances show that Jones=s
confession was voluntary.  See Tex.
Code Crim. Proc. Ann. art. 38.21; Kelly, 204 S.W.3d at 818; Creager,
952 S.W.2d at 855.   Consequently, we
overrule Jones=s second point. 

V.  Conclusion

Having
overruled Jones=s two points, we affirm the
trial court=s judgment.

 

SUE WALKER

JUSTICE

 

PANEL: DAUPHINOT, GARDNER, and WALKER, JJ.

 

DO NOT PUBLISH

Tex. R. App. P. 47.2(b)

 

DELIVERED: January 28, 2010

 











[1]See Tex. R. App. P. 47.4.





[2]Jones requested that his
bail be reduced from $50,000 to $5,000, and the trial court ultimately ruled on
his motion by reducing his bail to $35,000. 
Although Jones was not entitled to hybrid representation, we can
consider this pro se motion on appeal.  See
Robinson v. State, 240 S.W.3d 919, 923 (Tex. Crim. App. 2007) (holding
that trial court is free to disregard pro se motions of a defendant represented
by counsel, but that once a court chooses to rule on such motions, those
decisions are reviewable); Webb v. State, 533 S.W.2d 780, 784 (Tex.
Crim. App. 1976) (holding that although a criminal defendant does not have the
right to hybrid representation, a patient trial judge may permit it).





[3]Jones filed a third pro
se document, entitled AStatement of
Declarations,@ one month later.  Jones stated that he had a Aright to be heard,@ but also appeared to
request that trial be reset so that his family could have more notice to travel
from Indiana to Texas for his trial. 
However, we will not consider this pro se filing because Jones had
appointed counsel at that time and because nothing suggests that the trial
court considered this filing.  See
Robinson, 240 S.W.3d at 923.





[4]Jones does not argue that
he suffered oppressive pretrial incarceration, perhaps because it is
self-evident that his twenty-nine-month pretrial incarceration was
oppressive.  See, e.g., Munoz,
991 S.W.2d at 828 (holding that appellant=s incarceration during entire seventeen‑month
delay was dispositive of the oppressive pre-trial incarceration interest).  Nevertheless, this is only one of the three
interests we must consider in our prejudice analysis.





[5]See Tex. Penal Code Ann. ' 12.42(b) (Vernon
Supp. 2009) (providing for enhancement of second-degree felony to first-degree
felony upon showing that defendant has prior felony conviction).