**REVERSE and DISMISS; Opinion Filed August 27, 2012.**



In The
# Court of Appeals
## Fifth District of Texas at Dallas

### No. 05-10-01339-CR

## MARCOS ANTONIO DELUNA, Appellant

### V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the Criminal District Court No. 3
Dallas County, Texas
Trial Court Cause No. F-0272113-J**

# OPINION

Before Justices O'Neill, Richter, and Francis
Opinion By Justice O'Neill

Appellant Marcos Antonio Deluna appeals his conviction for indecency with a child. After finding appellant guilty, the trial court assessed punishment at fifteen years' confinement. In a single issue, appellant contends the trial court should have dismissed the indictment against him because his Sixth Amendment right to a speedy trial was violated. For the following reasons, we reverse appellant's conviction and dismiss the indictment.

In April 2002, the child reported to police appellant committed the offense. An arrest warrant issued on May 2, 2002 and the grand jury indicted appellant on May 28, 2002. Appellant, however, was not arrested for the offense until April 16, 2010, roughly eight years after his indictment. The case proceeded to trial about five months later. At that time, appellant filed a motion to dismiss for

violation of his right to a speedy trial. The trial court considered the motion to dismiss at the same time as it considered guilt/innocence. After hearing the evidence, the trial court denied the motion to dismiss and found appellant guilty.

In a single issue, appellant contends he was denied his constitutional right to a speedy trial. He asserts the eight-year delay between the time he was indicted and the time he was arrested was unreasonable and the State failed to justify it. He asserts the extraordinary delay establishes presumed prejudice and further claims actual prejudice in that he suffered memory loss and was unable to find some witnesses.

The Sixth Amendment to the United States Constitution guarantees an accused the right to a speedy trial. *Cantu v. State*, 253 S.W.3d 273, 280 (Tex. Crim. App. 2008). In determining whether a defendant was denied his right to a speedy trial, we must balance four factors: (1) the length of the delay, (2) the State's reasons for the delay, (3) the defendant's assertion of the right, and (4) the prejudice to the defendant. *Barker v. Wingo*, 407 U.S. 514, 530 (1972). A speedy trial analysis is not triggered by a set time element, but generally delays that approach one year are "presumptively prejudicial" and sufficient to trigger further analysis. *See Doggett v. United States*, 505 U.S. 647, 652 n.1 (1992).

In conducting our analysis, we balance the State's conduct against the defendant's and consider the four factors together, along with any other relevant circumstances. *Barker*, 407 U.S. at 530, 533. While the State has the burden to justify the length of delay, the defendant has the burden to show assertion of the right and prejudice. *Cantu*, 253 S.W.3d at 280. The defendant's burden of proof on the latter two factors "varies inversely" with the State's degree of culpability for the delay. *Id.* The greater the State's bad faith or official negligence and the longer its actions delay a trial, the less a defendant must show actual prejudice or prove diligence in asserting his right to a speedy trial. *Id.* at 280-81.

We review a trial court's speedy trial decision under a bifurcated standard of review; an abuse

of discretion for factual components and a de novo standard for legal components. *Cantu,* 253 S.W.3d at 281; *Zamorano v. State,* 84 S.W.3d 643, 648 (Tex. Crim. App. 2002). In reviewing factual issues, we defer to a trial court's resolution of "disputed facts," and its right to draw "reasonable inferences" from those facts. *Id.* As trier of fact, a trial court is the sole judge of the credibility of the witnesses, and may disbelieve any evidence so long as there is a reasonable basis for doing so. *Cantu,* 253 S.W.3d at 282.

We will begin first with the State's response to appellant's complaint. The State has done little to attempt to justify the trial court's ruling on the merits, instead devoting almost the entirety of its briefing to its assertion that our review of the trial court's ruling is premature. Specifically, it asserts we should first abate this appeal and order the trial court to enter findings of fact and conclusions of law. It relies on two cases in which the State, as the appellant, wanted such findings to avoid the appellate presumption that the trial court made all implicit findings of fact that support its ruling. *See State v. Cullen,* 195 S.W.3d 696, 699 (Tex. 2006); *State v. Elias,* 339 S.W.3d 667, 676 (Tex. Crim. App. 2012). Here, neither appellant, as the losing party, nor the State (understandably) requested any findings of fact and conclusions of law.

We are somewhat perplexed by the State's position. Findings of fact and conclusion of law are intended to assist the losing party, by allowing it to avoid the presumption that the trial court made all disputed factual findings in support of its decision. *See State v. Ross,* 32 S.W.3d 853, 855 (Tex. Crim. App. 2000). Appellant did not request the trial court to make findings and he has not requested this court to abate for more specific findings. The consequence is that we will presume the trial court made all necessary fact findings that support its ruling, provided however that those findings are supported by the record. *Ross,* 32 S.W.3d at 855-56.

The State next asserts that without findings of fact and conclusions of law the record is not adequate to review appellant's complaint. It relies on *Davis v. State,* 345 S.W.3d 71, 77-78 (Tex. Crim. App. 2011) and *Newman v. State,* 331 S.W.3d 447, 449-50 (Tex. Crim. App. 2011). However,

in both cases, the record did not include a reporter's record of proceedings the appellate court was asked to review. It was thus impossible for the court of appeals to review the trial court's decision. According to the State, without adequate findings of fact and conclusion of law, this Court cannot "meaningfully review" the trial court's ruling. We cannot agree. While complete express fact findings may be helpful, they are certainly not necessary to our review. *See, e.g,, Zamorano,* 84 S.W.3d at 648; *State v. Munoz,* 991 S.W.2d 818, 821 (Tex. Crim. App. 1999).

Finally, in the alternative, in its closing two paragraphs, the State summarily argues that if we do not abate this appeal, we should affirm because the trial court could have found, and there was evidence to show, appellant had "evaded" and was thus at fault for some or all of the delay and appellant has not shown prejudice. We will consider these arguments in our *Barker* analysis.

1. Length of the Delay

The length of the delay is the triggering mechanism for speedy trial analysis. Here, appellant showed an eight-year delay between the time he was indicted and the time of his arrest. This delay is not only sufficient to trigger speedy trial analysis, but the United States Supreme Court has described a similar delay as "extraordinary." *See Doggett,* 505 U.S. at 652. And the Court of Criminal Appeals has described a much shorter delay as "patently excessive." *See Dragoo v. State,* 96 S.W.3d 308, 315 (Tex. Crim. App. 2003) (three-and-a-half year delay). This factor weighs heavily against the State. *See Zamorano v. State,* 84 S.W.3d 643, 649 (Tex. Crim. App. 2002).

2. Reasons for the Delay

Because the delay in this case was "presumptively prejudicial" it was incumbent upon the State to justify the delay. Under the factual circumstances of this case, the State was required to explain why it failed to arrest appellant for eight years. However, the State did not present any evidence that from 2002 until 2010 that (1) it ever attempted to serve the warrant, (2) it could not serve the warrant because it did not know where appellant was, (3) it put the warrant in any type of data base, or (4) it made any efforts to locate appellant. Moreover, the record shows appellant was

arrested in Dallas County in 2008 for cocaine possession. After he was bonded out, appellant was again arrested in Oklahoma as a "fugitive from justice" on the possession charge, returned to Dallas County, and served six months for that offense. Yet, both times the State had appellant in custody, it failed to arrest him on the indecency charge or otherwise proceed with the case. Only after appellant was released from custody for the possession case - on April 16, 2010 - was appellant finally arrested for the indecency case.

Despite its failure to present any evidence of its efforts to apprehend appellant, the State asserts there is evidence appellant was intentionally "evading." First, it relies on evidence appellant moved after he was accused of the offense. The evidence at trial showed that at the time he was accused of the offense, appellant was living with the child's grandmother in the same house as the child. After he was accused, appellant moved and neither the child, nor the child's mother ever saw him again. The child's mother testified that after they reported the offense to CPS and to police and the child was interviewed by the Child Advocacy Center, they "never heard nothing from nobody." She testified she never saw appellant again, and "thought he had just fled." She said she had "no idea" whether appellant was in Dallas. When asked whether she knew if her mother or anyone else continued to see appellant or members of his family, she responded, "No, I don't – not that I know."

Appellant testified that, except for the trip to Oklahoma, he has been living and working in Dallas since the offense. When he heard the child had accused him of the offense, he and her grandmother broke up and he moved out. After that, he sometimes lived with his brother and sometimes with his father. Appellant testified the child's family knew he was in Dallas and he had seen the child's grandmother over the years because he had worked for one of her sisters. Although he said he "knew" police were looking for him in 2002 after the offense, and there was an arrest warrant out for him, he did not believe it; he stated he had been stopped by police several times over the years, but he was never arrested.

As noted above, it is the State's burden to justify the delay. The State maintains it did so with

evidence appellant was responsible for the delay. First, the State asserts there was evidence appellant was "evading." We cannot agree with the State that evidence appellant moved out of a house where the victim lived raises an inference of evading detention.[1] Further, the fact the warrant did not have appellant's address after he moved does not alone justify its failure to apprehend appellant for the following eight years. The State suggests it could not have located appellant even if it had tried. While appellant admitted he was not a legal resident of Dallas, he had nevertheless resided in Dallas for over twenty years. In fact, appellant had lived with the victim's grandmother for between nine and eleven years before the offense and their families were acquainted. Yet the State did not present any evidence that it attempted to utilize any of these connections to locate appellant. Indeed, the child's mother testified that after the offense was reported, they never heard anything more. We conclude the State has not shown they could not have located appellant. *See Guajaro v. State*, 999 S.W.2d 566, 569-70 (Tex. App.—Houston [14th Dist.] 1999, pet. ref'd) (delay caused by police's gross negligence in attempting to locate appellant weighs heavily against the State).

Additionally, it is undisputed appellant was in custody twice on an unrelated charge. The State attempts to fault appellant for its failure to arrest appellant on those occasions. It asserts there is evidence that appellant was not arrested then because he intentionally gave a false birthdate when he was booked-in. At trial, appellant testified "they" had an incorrect birthdate "in the system" when he was booked into Lew Sterrett, which would have been in late 2009. The birthdate that was "in the system" was 12/24/1955, but appellant's actual birthdate is 12/27/1955. While acknowledging this could have been a typographical error, the State urges the trial court could have reasonably determined appellant fabricated his birthdate to avoid detection. There is nothing in the record to show where "in the system" the birthdate appeared or that appellant's birthdate was self-reported. While a trial court may make reasonable inferences from the evidence, such inferences

---

[1] Indeed, it is not even clear appellant could have stayed at the house. The child's mother testified after the offense, she moved out and would not return until the matter was "resolved." She and her daughter returned two weeks later and appellant was gone.

must be supported by evidence.[2] *See Hooper v. State*, 214 S.W.3d 9, 16 (Tex. Crim. App. 2007).

The record does show appellant was a fugitive from justice after his release on bond on the possession charges. Appellant was released on December 27, 2008 and arrested on October 20, 2009 in Oklahoma for failing to appear at a court date. Although appellant claimed he was only in Oklahoma for one day, the trial court was not required to believe that testimony. But even if appellant was to blame for the entire portion of this delay, it accounts for only 10 months of the eight-year delay.

Finally, we reiterate that it was the State's burden to not only to justify the delay, but also to bring appellant to trial. Yet it chose not to show what, if any, efforts it made to locate or arrest appellant. We conclude the State not only failed to justify the delay, but that the record shows the State's neglect. Because the delay was so lengthy, this factor weighs heavily against the State. *See Doggett,* 505 U.S. at 657; *Orand*, 254 S.W.3d 560, 567 (Tex. App.—Fort Worth 2008, pet. ref'd).

3. Assertion of Right

Although it is the State's duty to bring a defendant to trial, a defendant still has some responsibility to assert his right to a speedy trial. *Cantu*, 253 S.W.3d at 283. Filing for dismissal instead of a speedy trial will generally weaken a speedy-trial claim because it shows a desire to have no trial instead of a speedy one. *Id.* If a defendant fails to first seek a speedy trial before seeking dismissal of the charges, he should provide cogent reasons for doing so. *Id.*

Although there was evidence appellant had heard - sometime in 2002 - that police had a warrant for his arrest, appellant testified he was stopped by police several times, but was not arrested. The only objective evidence on this issue tends to support this testimony. Specifically, appellant was actually arrested twice in 2008 on unrelated charges, but he was not arrested for this offense. It was

---

[2] Additionally, the State's theory that the birthdate error shows appellant was "evading" is not supported by the record as a whole. Under the State's theory, appellant intentionally gave a false birthdate in 2008 so authorities would not discover the 2002 warrant. However, the 2002 warrant contains the same birthdate error. Therefore, the error cannot support an inference appellant was avoiding detention. Further, the indictment in this case, containing the 12/24/1955 birthdate, alleged a prior conviction containing the 12/27/1955 birthdate. Thus, both dates of birth were connected to appellant's file since 2002. Thus, this error does not explain the delay in this case, much less allow it to be attributed to appellant.

reasonable for appellant to believe there was not a warrant for his arrest under these circumstances. Further, there is no evidence that appellant knew he had been indicted for the offense and thus that there was a pending case against him. Indeed, neither the victim nor the victim's mother knew there was a case.

When appellant was finally arrested on these charges on April 16, 2010, he was first appointed counsel. That counsel did not speak Spanish and another counsel was appointed on May 10, 2010. After that time, appellant did not request any continuances, and the case proceeded to trial four months later. On the day of trial, appellant asserted his right to a speedy trial had been violated and sought dismissal of the charges. By the time appellant was finally arrested and notified of the indictment and the specific charges against him, eight years had already passed from the time of the offense. At that time, it was too late for appellant to obtain a "speedy trial." We conclude the record provides cogent reasons for why appellant sought a dismissal before seeking a speedy trial.

Even if we were to conclude that appellant could have more effectively asserted his right by first determining definitively if there was a warrant out for his arrest, then turning himself in, and then demanding his right to a speedy trial, we would not weigh his failure to do so heavily against him. Rather, because appellant did not know there was an indictment against him, was not represented by counsel, and had not been notified of his right to a speedy trial, this factor would weigh against him only slightly. *See Barker*, 407 U.S. at 528 (rejecting demand-waiver rule in favor of less rigid approach because among other things, it allows trial courts to consider whether defendant was represented by counsel during the period he failed to obtain a speedy trial); *see also Dragoo*, 96 S.W.3d at 315 (Tex. Crim. App. 2003) (weighing appellant's acquiescence to three-and-a-half year delay heavily against him because, although represented by counsel at all relevant times, he failed to prove his alleged reasons for such acquiescence).

4. Prejudice Caused by the Delay

The last *Barker* factor is "prejudice to the defendant" resulting from the delay. *Barker*, 407 U.S. at 432-33. Prejudice to the defendant is assessed in light of the interests a right to a speedy trial is designed to protect: (1) preventing oppressive pretrial incarceration, (2) minimizing the anxiety and concern of the accused, and (3) limiting the possibility that the defense will be impaired. *Munoz*, 991 S.W.2d at 826. Of these interests, the most important is protecting a defendant's ability to adequately prepare his case. *Barker*, 407 U.S. at 532-33.

Impairment of one's defense is the most difficult form of speedy trial prejudice to prove because time's erosion of exculpatory evidence and testimony can rarely be shown. *Barker*, 407 U.S. at 532. The possibility that the accused's defense will be impaired by dimming memories and loss of exculpatory evidence is the most serious interest that the right to speedy trial protects because the inability of a defendant to adequately prepare his case skews the fairness of the entire system. *Doggett*, 505 U.S. at 654. Affirmative evidence of particularized prejudice is not essential to every speedy trial claim because excessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or even identify. *Id.* at 655. And the presumption of prejudice grows and intensifies over time. *Id.* at 656. However, the presumption of prejudice to a defendant's ability to defend himself can be "extenuated . . . by the defendant's acquiescence" in the delay. *Id.* at 658.

Here, the State relied entirely on the testimony of the child and her mother to prove its allegations. Without question, such evidence is not only sufficient to support a conviction, it is generally the most powerful and probative evidence available. Nevertheless, such testimony is dependent entirely on the memories of the witnesses. Appellant's defense was likewise dependent on his being able to effectively cross-examine the witnesses with respect to their eight-year-old memories and eight-year-old details. We conclude the delay in this case, which the State failed to justify, made it virtually impossible for appellant to conduct effective cross-examination. *See Orand*, 254 S.W.3d at 570. ("the passage of time rendered the credibility of the State's witnesses concrete,

exempt from the testing fire of cross-examination planned after detailed witness interviews and extensive defense investigation.") *Id.* at 570.

Weighing all the *Barker* factors, we conclude appellant was denied his constitutional right to a speedy trial. The factor we find most significant in this case, and that affects our view of all the other factors, is the sheer length of the delay. The State has not attempted to directly justify this delay. Instead, it asks that we rely on unsupportable inferences to blame appellant for the State's failure to find appellant, when there is nothing in the record to show they were attempting to find him. We recognize the motion to dismiss was filed on the day of trial, and the State was perhaps not prepared to respond to it. But appellant established a significant delay necessitating explanation. The State did not object or ask for time to respond to the motion. We will not presume the State could have justified the delay had it chosen to do so. In *Doggettt*, the United State's Supreme Court stated, "[w]hen the Government's negligence . . . causes delay six times as long as that generally sufficient to trigger judicial review . . . and when the presumption of prejudice, albeit unspecified, is neither extenuated, as by the defendant's acquiescence, nor persuasively rebutted, the defendant is entitled to relief." *See Doggett,* 505 U.S. at 657. We likewise conclude appellant is entitled to relief. We sustain appellant's sole issue, reverse his conviction, and order the indictment dismissed.

MICHAEL J. O'NEILL
JUSTICE

Do Not Publish
TEX. R. APP. P. 47
101339F.U05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

MARCOS ANTONIO DELUNA, Appellant

No. 05-10-01339-CR     V.

THE STATE OF TEXAS, Appellee

Appeal from the Criminal District Court No. 3 of Dallas County, Texas. (Tr.Ct.No. F-0272113-J).
Opinion delivered by Justice O'Neill, Justices Richter and Francis participating.

      Based on the Court's opinion of this date, we **REVERSE** appellant's conviction and **ORDER** the indictment is dismissed.

Judgment entered August 27, 2012.

MICHAEL J. O'NEILL
JUSTICE