

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

NO. 2-08-258-CR

QUINCY PAUL JONES                                                         APPELLANT

V.

THE STATE OF TEXAS                                                              STATE

------------

FROM THE 297TH DISTRICT COURT OF TARRANT COUNTY

------------

## MEMORANDUM OPINION[1] ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

------------

Pursuant to Texas Rule of Appellate Procedure 50, we withdraw our November 12, 2009 opinion and judgment and substitute the following. *See* Tex. R. App. P. 50. We write to address appellant Quincy Paul Jones's claim on petition for discretionary review that, in our prejudice analysis of Jones's

---

[1] *... See* Tex. R. App. P. 47.4.

speedy trial claim, we erroneously refused to consider his argument that the delay in his trial resulted in an increased punishment range.

## I. Introduction

Appellant Quincy Paul Jones appeals his conviction for two counts of sexual assault of a child. In two points, Jones argues that the trial court erred by denying his motion to dismiss for violation of his right to a speedy trial and by overruling his objection to the voluntariness of his confession. We will affirm.

## II. Factual and Procedural Background

In 2004, Jones lived with his then-girlfriend M.B., their daughter, and M.B.'s two other children in Tarrant County. Jones later moved to Muncie, Indiana. In December 2005, over a year after Jones moved out, M.B.'s fifteen-year-old daughter K.L. told M.B. that Jones had sexually assaulted her on multiple occasions when he lived with them. M.B. called the Mansfield police department. Mansfield police obtained a warrant for Jones's arrest and contacted the police department in Muncie, Indiana. Muncie child abuse investigator Sergeant Darrin Clark went to Jones's last known address, and when no one answered, he left his business card. He also contacted Jones's probation officer Heather Pierce and explained that he needed to speak with Jones regarding some allegations against him in Texas. Pierce told Jones that

2

he "needed to cooperate with the Muncie Police Department." Jones complied, and during an interview at the Muncie police station on February 14, 2006, he admitted to the sexual assault and was arrested.

Jones remained in jail from the time of his arrest on February 14, 2006, until his jury trial on July 15, 2008. Seven months after his arrest, and although represented by court-appointed counsel, Jones filed a pro se application for writ of habeas corpus, claiming that his constitutional right to a speedy trial had been violated.

Trial was then set for October 24, 2006, November 6, 2006, March 5, 2007, and June 4, 2007. Although neither the State nor Jones filed motions for continuances or announced not ready for trial, trial was not held on any of those dates.

On June 4, 2007, the trial court allowed Jones's appointed attorney to withdraw due to a conflict with Jones, and four days later, the court appointed new counsel for Jones. Trial was then set for August 20, 2007, November 5, 2007, and February 4, 2008, but trial was not held on those dates. Again, neither the State nor Jones filed motions for continuances or announced not ready for trial.

On June 5, 2008, Jones filed a pro se "Plea of M[ercy]," in which he asked the court for "help in speedy completion" of his trial. Approximately one

month later, and twenty-nine months after Jones's arrest, his attorney filed a motion to dismiss for failure to grant a speedy trial.

Jury selection began four days later on July 15, 2008. The following day, the trial court conducted a pre-trial hearing on Jones's motion to dismiss and denied the motion. The jury ultimately found Jones guilty of both counts and assessed Jones's punishment for each count at thirty-five years' imprisonment and a $6,000.00 fine. The trial court ordered the sentences to run concurrently.

### III. SPEEDY TRIAL

In his first point, Jones argues that the trial court's denial of his motion to dismiss violated his right to a speedy trial under the United States and Texas Constitutions.

### A. The Right to a Speedy Trial

The Sixth Amendment to the United States Constitution and article 1, section 10 of the Texas Constitution guarantee an accused the right to a speedy trial. *See* U.S. Const. amend. VI; Tex. Const. art. I, § 10; *see also Zamorano v. State*, 84 S.W.3d 643, 647 (Tex. Crim. App. 2002); *Orand v. State*, 254 S.W.3d 560, 565 (Tex. App.—Fort Worth 2008, pet. ref'd). Texas courts analyze claims of a denial of this right, both under the federal and state

4

constitutions, the same. *See Harris v. State*, 827 S.W.2d 949, 956 (Tex. Crim. App.), *cert. denied*, 506 U.S. 942 (1992). In *Barker v. Wingo*, the United States Supreme Court qualified the literal sweep of the right to a speedy trial by analyzing the constitutional question in terms of four specific factors:

(1) whether the delay before trial was uncommonly long;

(2) whether the government or the criminal defendant is more to blame for the delay;

(3) whether in due course, the defendant asserted his right to a speedy trial; and

(4) whether the defendant suffered prejudice as a result of the delay.

407 U.S. 514, 530, 92 S. Ct. 2182, 2192 (1972). Under *Barker*, courts must analyze federal constitutional speedy trial claims by first weighing the strength of each of the above factors and then balancing their relative weights in light of the conduct of both the prosecution and the defendant. *Zamorano*, 84 S.W.3d at 648. None of the four factors is either a necessary or sufficient condition to the finding of a deprivation of the right to a speedy trial; instead, all must be considered together along with any other relevant circumstances. *Id.* No one factor possesses "talismanic qualities"; thus, courts must "engage in a difficult and sensitive balancing process" in each individual case. *Id.* (quoting *Barker*, 407 U.S. at 533, 92 S. Ct. at 2193).

5

## B. Standard of Review

In reviewing the trial court's ruling on a speedy trial claim, we apply a bifurcated standard of review: an abuse of discretion standard for the factual components and a de novo standard for the legal components. *Id.* Review of the individual *Barker* factors necessarily involves factual determinations and legal conclusions, but the balancing test as a whole is a purely legal question. *Cantu v. State*, 253 S.W.3d 273, 282 (Tex. Crim. App. 2008).

Under this standard, we defer not only to a trial judge's resolution of disputed facts, but also to the trial judge's right to draw reasonable inferences from those facts. *Id.* at 281. In assessing the evidence at a speedy trial hearing, the trial judge may completely disregard a witness's testimony, based on credibility and demeanor evaluations, even if that testimony is uncontroverted. *Id.* The trial judge may disbelieve any evidence so long as there is a reasonable and articulable basis for doing so. *Id.* And all of the evidence must be viewed in the light most favorable to the trial judge's ultimate ruling. *Id.*

## C. Analysis of the *Barker* Factors

### 1. Length of Delay

6

The length of delay is a "triggering mechanism" for analysis of the other *Barker* factors. *Barker*, 407 U.S. at 530–32, 92 S. Ct. at 2192–93; *Zamorano*, 84 S.W.3d at 648. Depending on the nature of the charges, a postaccusation delay of about one year is "presumptively prejudicial" for purposes of the length-of-delay factor. *Doggett v. United States*, 505 U.S. 647, 652 n.1, 112 S. Ct. 2686, 2691 n.1 (1992). If the accused shows that the interval between accusation and trial has crossed the threshold dividing "ordinary" from "presumptively prejudicial" delay, then the court must consider, as one factor among several, the extent to which that delay stretches beyond the bare minimum needed to trigger judicial examination of the claim. *Zamorano*, 84 S.W.3d at 649 (quoting *Doggett*, 505 U.S. at 652, 112 S. Ct. at 2690–91). This second inquiry is significant to the speedy trial analysis because the "presumption that pretrial delay has prejudiced the accused intensifies over time." *Id.*

The State here concedes that the twenty-nine-month delay between Jones's arrest and trial weighs in Jones's favor and triggers an analysis of the remaining *Barker* factors. Furthermore, because the delay stretched well over twice the length of time needed to trigger the inquiry, this factor weighs heavily in favor of Jones. *See, e.g.*, *Shaw v. State*, 117 S.W.3d 883, 890 (Tex. Crim.

7

App. 2003) (holding delay of thirty-eight months weighed heavily in appellant's favor); *Rodriquez v. State*, 227 S.W.3d 842, 844 (Tex. App.—Amarillo 2007, no pet.) (holding delay of thirty-two months between arrest and trial weighed heavily against the State).

### 2. Reasons for the Delay

The second factor—reasons for the delay—seeks to ensure that courts do not simply concentrate on the sheer passage of time without taking into account the reasons underlying the delay. *See Rashad v. Walsh*, 300 F.3d 27, 34 (1st Cir. 2002), *cert. denied*, 537 U.S. 1236 (2003). Under *Barker*, "different weights should be assigned to different reasons" for the delay. 407 U.S. at 531, 92 S. Ct. at 2192. The inquiry into causation involves a sliding scale: deliberately dilatory tactics must be weighed more heavily against the State than periods of delay resulting from negligence. *Id.* Furthermore, valid reasons for delay should be weighed only slightly, if at all, against the State. *State v. Munoz*, 991 S.W.2d 818, 824 (Tex. Crim. App. 1999).

Like the first factor, the State also concedes that this factor weighs in Jones's favor, although "only 'slightly.'" At the hearing on Jones's motion to dismiss, the trial court's court coordinator testified that the State had never failed to announce ready for trial at any of the trial settings or moved for a

continuance.  She explained that the trial court is a busy court and had approximately 1,600 cases pending at that time.  The court coordinator could not testify as to why Jones's trial had been reset so many times but said it was conceivable that it was reset because other defendants could have been in custody longer than Jones, thus giving their cases preference over his.

Although a neutral reason such as an overcrowded docket weighs less heavily against the State, it should nevertheless be considered because the ultimate responsibility for bringing cases to trial in a timely manner rests with the government.   *Barker*, 407 U.S. at 531, 92 S. Ct. at 2192; *Parkerson v. State*, 942 S.W.2d 789, 791 (Tex. App.—Fort Worth 1997, no writ). However, because no evidence exists here that the State used deliberately dilatory tactics, we agree with the State that this factor weighs only slightly against the State.   *See, e.g.*, *Murphy v. State*, 280 S.W.3d 445, 453 (Tex. App.—Fort Worth 2009, pet. ref'd) (holding second factor did not weigh heavily against State when no evidence existed that State used purposeful dilatory tactics).

### 3.  Assertion of the Right

We next consider the extent to which Jones affirmatively sought a speedy trial. *Barker*, 407 U.S. at 531–32, 92 S. Ct. at 2192.  The nature of

the speedy trial right makes it "impossible to pinpoint a precise time in the process when the right must be asserted or waived, but that fact does not argue for placing the burden of protecting the right solely on defendants." *Id.* at 527, 92 S. Ct. at 2190. The right to a speedy trial "is constitutionally guaranteed and, as such, is not to be honored only for the vigilant and the knowledgeable." *Id.* at 527 n.27, 92 S. Ct. at 2190 n.27 (quoting *Hodges v. United States*, 408 F.2d 543, 551 (8th Cir. 1969)).

Whether and how a defendant asserts this right is closely related to the other three factors because the strength of the defendant's efforts will be shaped by them. *Id.* at 531, 92 S. Ct. at 2192. Filing for a dismissal instead of a speedy trial generally weakens a speedy trial claim because it may show a desire to have no trial instead of a speedy one. *Cantu*, 253 S.W.3d at 283.

In this case, Jones first asserted his right to a speedy trial approximately six months after he was arrested by filing an application for writ of habeas corpus. The State argues that the application for writ of habeas corpus is not "the proper starting point from which to measure [Jones's] assertion of his speedy trial right" because Jones attached it to the end of a motion to reduce bail and because he asserted the violation of his right to a speedy trial as his

10

third and final ground for habeas relief—"buried in the last substantive paragraph of this eleven-page bail reduction motion."[2]

> Nevertheless, Jones specifically alleged in that application,
>
> I have been incarcerated for over 200 days without a trial date or trial being conducted and request a hearing to hear my right to be released on bail . . . . My constitutional right to a speedy trial [has] been violated.

Although he did not directly request a speedy trial, he asserted a violation of his right to a speedy trial, and he did not request dismissal for failure to grant a speedy trial. *See Cantu*, 253 S.W.3d at 283; *Phillips v. State*, 650 S.W.2d 396, 401 (Tex. Crim. App. 1983) ("[A] defendant's motivation in asking for dismissal rather than a prompt trial is clearly relevant, and may sometimes attenuate the strength of his claim.").

---

[2] ... Jones requested that his bail be reduced from $50,000 to $5,000, and the trial court ultimately ruled on his motion by reducing his bail to $35,000. Although Jones was not entitled to hybrid representation, we can consider this pro se motion on appeal. *See Robinson v. State*, 240 S.W.3d 919, 923 (Tex. Crim. App. 2007) (holding that trial court is free to disregard pro se motions of a defendant represented by counsel, but that once a court chooses to rule on such motions, those decisions are reviewable); *Webb v. State*, 533 S.W.2d 780, 784 (Tex. Crim. App. 1976) (holding that although a criminal defendant does not have the right to hybrid representation, a patient trial judge may permit it).

Over twenty months later, Jones again asserted his right to a speedy trial in his pro se "Plea of M[ercy]," in which he stated that he was "not sure" if his right to a speedy trial had been waived by his appointed counsel or by himself and that he would never waive that right and asked the court for "help in speedy completion." Trial was ultimately set for the following month, providing some evidence that the trial court considered his pro se motion. *See Robinson*, 240 S.W.3d at 923. Assuming the trial court considered this motion, thus making it subject to review, Jones did not request a hearing on his request for a speedy trial. *See Cook v. State*, 741 S.W.2d 928, 940 (Tex. Crim. App. 1987) (weighing third *Barker* factor against appellant because no evidence other than two motions for speedy trial filed with court showed that appellant asserted his right to a speedy trial by requesting hearings to present evidence on the matter), *vacated and remanded on other grounds*, 488 U.S. 807, 109 S. Ct. 39 (1988). Thus, although Jones's second pro se motion shows that he attempted to assert his right to a speedy trial, it tips the scales only slightly in his favor.[3]

---

[3] Jones filed a third pro se document, entitled "Statement of Declarations," one month later. Jones stated that he had a "right to be heard," but also appeared to request that trial be reset so that his family could have more notice to travel from Indiana to Texas for his trial. However, we will not consider this pro se filing because Jones had appointed counsel at that time and because nothing suggests that the trial court considered this filing. *See*

Finally, the motion to dismiss, filed by Jones's attorney twenty-nine months after Jones's arrest, shows a desire to have no trial instead of a speedy trial and weakens Jones's case. *See Cantu*, 253 S.W.3d at 283.

Jones submits that the third *Barker* factor weighs in his favor but concedes that it does not weigh "as heavily as it would had he repeatedly asserted his right to speedy trial." We agree. Considering the two pro se filings, filed six months and twenty-seven months after Jones's arrest, and the motion to dismiss filed twenty-nine months after his arrest, we weigh this factor at least slightly against the State and in favor of Jones.

### 4.  Prejudice

The final factor of "prejudice" must be assessed in light of the interests the speedy trial right was intended to protect. *See Barker*, 407 U.S. at 532, 92 S. Ct. at 2193. Those interests are (1) to prevent oppressive pretrial incarceration, (2) to minimize the accused's anxiety and concern, and (3) to limit the possibility the defense will be impaired. *Id.* Of these interests, the third is the most serious because the inability of a defendant to adequately prepare his case skews the fairness of the entire system. *Id.*; *Doggett*, 505

---

*Robinson*, 240 S.W.3d at 923.

U.S. at 654, 112 S. Ct. at 2692; *Dragoo v. State*, 96 S.W.3d 308, 315 (Tex. Crim. App. 2003).

In some cases, the delay may be so excessive as to be presumptively prejudicial. *Guajardo v. State*, 999 S.W.2d 566, 570 (Tex. App.—Houston [14th Dist.] 1999, pet. ref'd); *see Doggett*, 505 U.S. at 658, 112 S. Ct. at 2694. Courts have held that delays of five years and longer are presumptively prejudicial under the fourth *Barker* factor. *See Guajardo*, 999 S.W.2d at 570 (five-year delay raises presumption of prejudice); *see also Doggett*, 505 U.S. at 658, 112 S. Ct. at 2694 (eight and one-half years was presumptively prejudicial); *Orand*, 254 S.W.3d at 570 (fourteen-year delay was presumptively prejudicial). Yet even when the delay is presumptively prejudicial, the defendant must nevertheless show that he has, in fact, been prejudiced. *Guajardo*, 999 S.W.2d at 570; *see Doggett*, 505 U.S. at 655–56, 112 S. Ct. at 2693.

A showing of actual prejudice is not required; however, a defendant must make a prima facie showing of prejudice caused by the delay of the trial. *Munoz*, 991 S.W.2d at 826. Once the defendant has made such a showing, the burden shifts to the State. *Guajardo*, 999 S.W.2d at 570–71.

Although the delay in the present case triggers a speedy trial analysis, it is not long enough for Jones to have suffered presumptive prejudice. *See Compass v. State*, No. 02-06-00075-CR, 2007 WL 2067733, at *3 n.28 (Tex. App.—Fort Worth July 19, 2007, no pet.) (mem. op., not designated for publication) ("We decline to hold that a twenty-nine month delay is presumptively prejudicial."); *see also Clarke v. State*, 928 S.W.2d 709, 717 (Tex. App.—Fort Worth 1996, pet. ref'd) (finding no presumptive prejudice where appellant retried on punishment two years and five months after Supreme Court denied certiorari and five months after appellant filed motion for speedy retrial); *Sanders v. State*, 978 S.W.2d 597, 605 (Tex. App.—Tyler 1997, pet. ref'd) (finding nineteen-month delay not presumptively prejudicial).

Jones argues that he was prejudiced for three reasons.[4] He first argues that he suffered prejudice because the delay resulted in an increased punishment range. Over two years after his arrest, the State filed its notice of intent to seek an enhancement finding based on a prior felony conviction from 2001, which increased the punishment range from between two and twenty

---

[4] Jones does not argue that he suffered oppressive pretrial incarceration, perhaps because it is self-evident that his twenty-nine-month pretrial incarceration was oppressive. *See, e.g.*, *Munoz*, 991 S.W.2d at 828 (holding that appellant's incarceration during entire seventeen-month delay was dispositive of the oppressive pre-trial incarceration interest). Nevertheless, this is only one of the three interests we must consider in our prejudice analysis.

15

years' imprisonment to between five and ninety-nine years' imprisonment.[5] But the prior conviction used to enhance Jones's punishment occurred years before he was arrested for this offense. Thus, the delay did not create an opportunity for an increased punishment range—the possibility that Jones could face increased punishment existed regardless of any delay in his trial. *See* Tex. Penal Code Ann. § 12.42(b). *Cf. Clarke*, 928 S.W.2d at 716 (finding some prejudice when convictions for two extraneous offenses became final during delay and thus became admissible at trial under prior version of code of criminal procedure article 37.07).

Jones also argues that he was unable to locate and secure witnesses "who possibly could have testified on [his] behalf" due to the delay. At the motion to dismiss hearing, Jones's court-appointed investigator testified that in October 2007, Jones provided him with a list of four potential witnesses. The investigator located only one of the individuals, and that person did not want to participate in the trial. To claim prejudice because of a missing witness, a defendant must show that (1) the witness was unavailable at the time of trial, (2) the witness's testimony would have been relevant and material,

---

[5] *See* Tex. Penal Code Ann. § 12.42(b) (Vernon Supp. 2009) (providing for enhancement of second-degree felony to first-degree felony upon showing that defendant has prior felony conviction).

16

and (3) the defendant exercised due diligence in attempting to locate the witness. *Clarke*, 928 S.W.2d at 716. Jones has failed to show what material information these witnesses would have provided. *See Palacios v. State*, 225 S.W.3d 162, 169–70 (Tex. App.—El Paso 2005, pet. ref'd); *Clarke*, 928 S.W.2d at 716. Consequently, he has failed to make a prima facie showing that his defense was impaired by the absence of these witnesses.

Finally, Jones argues that the delay in his case caused him significant anxiety and distress. At the motion to dismiss hearing, Jones explained his anxiety and concern regarding his pretrial incarceration: "Just anxious, nervous, not being able to sleep, eat, just stressing off and on day to day. It's been a long road." Jones has failed to show that the anxiety he suffered either was abnormal or caused his case prejudice. *See Shaw*, 117 S.W.3d at 890 ("[A]ppellant offered no evidence to the trial court that the delay had caused him any unusual anxiety or concern, i.e., any anxiety or concern beyond the level normally associated with being charged with [the] crime.").

Jones does not present this court, and did not present the trial court, with any other argument regarding the prejudice-to-the-defense factor. *Cf. Zamorano*, 84 S.W.3d at 654 (noting, in prejudice analysis, defendant's testimony about undue anxiety, lost income, and missed work as a result of the

17

delay); *Puckett v. State*, 279 S.W.3d 434, 441 (Tex. App.—Texarkana 2009, no pet.) (finding prejudice where appellant showed witnesses with relevant testimony were unavailable). Jones does not meet the presumptively prejudicial standard, and even considering his oppressive pretrial incarceration, he has not made a prima facie showing that he suffered anxiety or concern or that his defense was impaired. *See Munoz*, 991 S.W.2d at 829 (holding prejudice was "minimal" where defendant showed oppressive pretrial incarceration and anxiety but failed to show defense was impaired by delay); *Meyer v. State*, 27 S.W.3d 644, 651 (Tex. App.—Waco 2000, pet. ref'd) (finding minimal prejudice where appellant suffered "some oppressive pretrial incarceration and undue anxiety" but did not "make even a prima facie showing that his defense had been impaired"), *abrogated on other grounds by Robinson v. State*, 240 S.W.3d 919 (Tex. Crim. App. 2007).

In short, on this record, any prejudice to Jones was "minimal." *Munoz*, 991 S.W.2d at 829; *Meyer*, 27 S.W.3d at 651. This factor weighs against finding Jones's speedy trial right was violated.

### 5. Balancing the Factors

Having addressed the *Barker* factors, we must now balance them. The twenty-nine-month delay between Jones's arrest and his trial weighs heavily

18

against the State and in favor of Jones.  The second factor—reasons for the delay—also weighs against the State, but only slightly because no evidence exists that the State used deliberately dilatory tactics.  The third factor—assertion of the right—weighs slightly against the State and in favor of Jones.  Finally, any prejudice suffered by Jones was minimal.  We hold that the weight of these factors, balanced together, supports the trial judge's ruling to deny Jones's motion to dismiss and that there was no violation of his right to a speedy trial. *See Palacios*, 225 S.W.3d at 170 (finding no speedy trial violation when first three factors weighed against State and fourth factor weighed heavily against appellant); *see also Russell v. State*, 90 S.W.3d 865, 874–75 (Tex. App.—San Antonio 2002, pet. denied) (finding no speedy trial violation when first three factors weighed in appellant's favor and presumptive prejudice was rebutted by failure to demonstrate any prejudice); *Guajardo*, 999 S.W.2d at 571 (same).  We overrule Jones's first point.

IV.  MOTION TO SUPPRESS

In his second point, Jones argues that the trial court erred by overruling his motion to suppress his videotaped confession because his parole officer told him he needed to cooperate with the police, rendering his confession involuntarily given.

19

## A. Standard of Review

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). In reviewing the trial court's decision, we do not engage in our own factual review. *Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990); *Best v. State*, 118 S.W.3d 857, 861 (Tex. App.—Fort Worth 2003, no pet.). The trial judge is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. *Wiede v. State*, 214 S.W.3d 17, 24–25 (Tex. Crim. App. 2007); *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000), *modified on other grounds by State v. Cullen*, 195 S.W.3d 696 (Tex. Crim. App. 2006). Therefore, we give almost total deference to the trial court's rulings on (1) questions of historical fact, even if the trial court's determination of those facts was not based on an evaluation of credibility and demeanor, and (2) application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor. *Amador*, 221 S.W.3d at 673; *Montanez v. State*, 195 S.W.3d 101, 108–09 (Tex. Crim. App. 2006); *Johnson v. State*, 68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002). But when application-of-law-to-fact questions do not turn on the credibility and demeanor

of the witnesses, we review the trial court's rulings on those questions de novo. *Amador*, 221 S.W.3d at 673; *Estrada v. State*, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); *Johnson*, 68 S.W.3d at 652–53.

Stated another way, when reviewing the trial court's ruling on a motion to suppress, we must view the evidence in the light most favorable to the trial court's ruling. *Wiede*, 214 S.W.3d at 24; *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006). When the trial court makes explicit fact findings, we determine whether the evidence, when viewed in the light most favorable to the trial court's ruling, supports those fact findings. *Kelly*, 204 S.W.3d at 818. We then review the trial court's legal ruling de novo unless its explicit fact findings that are supported by the record are also dispositive of the legal ruling. *Id*. at 819.

### B. Law on Voluntariness

The statement of the accused may be used in evidence if it was freely and voluntarily made without compulsion or persuasion. Tex. Code Crim. Proc. Ann. art. 38.21 (Vernon 2005). In deciding whether a statement was voluntary, we consider the totality of the circumstances in which the statement was obtained. *Creager v. State*, 952 S.W.2d 852, 855 (Tex. Crim. App. 1997); *Reed v. State*, 59 S.W.3d 278, 281 (Tex. App.—Fort Worth 2001, pet.

21

ref'd).  A confession is involuntary if circumstances show that the defendant's will was "overborne" by police coercion.  *Creager*, 952 S.W.2d at 856.  The defendant's will may be "overborne" if the record shows that there was "official, coercive conduct of such a nature" that a statement from the defendant was "unlikely to have been the product of an essentially free and unconstrained choice by its maker."  *Alvarado v. State*, 912 S.W.2d 199, 211 (Tex. Crim. App. 1995); *Frank v. State*, 183 S.W.3d 63, 75 (Tex. App.—Fort Worth 2005, pet. ref'd).

### C.  The Voluntariness of Jones's Confession

Jones is not complaining of the police officers' actions prior to or during his videotaped confession; he complains only that his parole officer's instruction to cooperate with the police investigation rendered his confession involuntary.

At the suppression hearing, Heather Pierce testified that she was Jones's parole officer in Muncie, Indiana and that Sergeant Clark had informed her that he was conducting an investigation into certain allegations against Jones.  She testified that she had called Jones, had explained that she did not know a lot about the allegation, and had told Jones that he "needed to cooperate with the Muncie Police Department."  Pierce testified that Jones would not have violated his parole if he had not cooperated, that she did not threaten him that he would

22

violate his parole if he did not cooperate, and that she did not promise him anything in exchange for his cooperation. On cross-examination, Pierce agreed that it is a "good thing" for a parolee to do what a parole officer tells him to do.

Jones testified at the suppression hearing that Pierce had told him that he "needed to go down [to the police station] and cooperate with them." He said that Pierce had given him a "direct order" to talk to police and that he had felt that if he did not cooperate with the police, he would violate his parole. He explained, "I felt like I did not have a choice at the time because the way that she called me, you know, she didn't sound — she just sound[ed] like it was a demand." On cross-examination, Jones testified that Pierce did not tell him that he would violate his parole if he did not cooperate with police and that she did not promise him anything in exchange for his cooperation. Jones also testified that both Pierce and Sergeant Clark had told him that he was not going to be arrested and that he thought he would go to the police station, tell his side of the story, and "be let go." He also stated that he went to the police station "voluntarily."

After the hearing, the trial court entered oral and written findings of fact, finding that Jones appeared voluntarily at the Muncie police department on February 14, 2006; that he freely, intelligently, knowingly, and voluntarily

23

waived his rights; and that he made his statement under voluntary conditions after waiving his rights.

Based on the evidence provided at the suppression hearing, and giving deference to the trial court's evaluation of the facts, we hold that the record supports the trial court's ruling and that the totality of the circumstances show that Jones's confession was voluntary. *See* Tex. Code Crim. Proc. Ann. art. 38.21; *Kelly*, 204 S.W.3d at 818; *Creager*, 952 S.W.2d at 855. Consequently, we overrule Jones's second point.

## V. CONCLUSION

Having overruled Jones's two points, we affirm the trial court's judgment.

SUE WALKER
JUSTICE

PANEL: DAUPHINOT, GARDNER, and WALKER, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: January 28, 2010

24