The STATE of Texas, Appellant,

v.

Oscar F. GUERRERO, Appellee.

No. 04–02–00401–CR.

Court of Appeals of Texas,
San Antonio.

April 30, 2003.

Rehearing Overruled May 20, 2003.

Jose M. Rubio, Jr., Webb County Dist. Atty., Raul A. Martinez, Linda Garza, Asst. Dist. Attys., Laredo, for State.

Oscar O. Pena, Laredo, for Oscar F. Guerrero.

Sitting CATHERINE STONE, Justice, PAUL W. GREEN, Justice, and SANDEE BRYAN MARION, Justice.

Opinion by CATHERINE STONE, Justice.

This is an appeal by the State from a dismissal for lack of a speedy trial. In one issue, the State contends the trial court erred by failing to properly apply the constitutional standards for a speedy trial to the facts of this case. We affirm the trial court's judgment.

## BACKGROUND

On April 21, 1998, Oscar Guerrero was indicted on two counts of indecency with a child for allegedly touching a child's genitals on April 1, 1997 and May 2, 1997. Authorities, however, did not arrest Guerrero for these offenses until August 5, 1999. Approximately one month after his arrest, on September 17, 1999, Guerrero filed a "Motion to Dismiss because of Post Indictment Delay." The trial court denied this motion.

On October 14, 1999, the trial court granted the State's request for a continuance, moving Guerrero's trial date from October 18, 1999 to December 13, 1999. On November 22, 1999, Guerrero filed a motion to reconsider his motion to dismiss. On December 6, 1999, the trial court, on its own motion, reset Guerrero's trial date for March 20, 2000. Guerrero filed a written objection to this postponement, urging the trial court to either schedule his trial for

the earliest possible date or dismiss his case. On March 20, 2000, the trial court denied Guerrero's November 22nd motion to reconsider his motion to dismiss and granted the State's request for another continuance. On March 27, 2000, the State filed a motion to dismiss because of newly discovered evidence. The trial court immediately granted the State's motion and dismissed the case without prejudice.

On August 14, 2001, the State re-indicted Guerrero, charging him with an additional count of indecency with a child for conduct occurring on April 15, 1997. The authorities, however, did not re-arrest Guerrero until October 10, 2001. Shortly after his re-arrest, Guerrero filed both a motion for speedy trial and a motion to dismiss. The trial court granted Guerrero's motion to dismiss on March 21, 2002.

## DISCUSSION

 Our only consideration for this appeal is whether the trial court erred by finding Guerrero was denied his right to a speedy trial. In determining whether a defendant's right to a speedy trial has been violated, we balance four factors: (1) length of the delay; (2) reasons for the delay; (3) assertion of the right; and (4) prejudice to the defendant resulting from the delay. *Barker v. Wingo*, 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972); *Dragoo v. State*, 96 S.W.3d 308, 313 (Tex. Crim.App.2003). The conduct of both the state and the defendant must be weighed when balancing the four *Barker* factors. *Barker*, 407 U.S. at 530, 92 S.Ct. 2182; *Dragoo*, 96 S.W.3d at 313. Importantly, no single factor is necessary or sufficient to find a speedy trial violation. *Barker*, 407 U.S. at 530, 92 S.Ct. 2182; *Dragoo*, 96 S.W.3d at 313.

 In reviewing the trial court's ruling, we apply a bifurcated standard of review. *Zamorano v. State*, 84 S.W.3d

643, 648 (Tex.Crim.App.2002). When using a bifurcated standard of review, we employ an abuse of discretion standard for the factual components and a *de novo* standard for the legal components of the trial court's decision. *Id.* Because Guerrero prevailed on his speedy trial claim, we must presume the trial court resolved any disputed fact issues in Guerrero's favor and are required to defer to these implied findings of fact that the record supports. *See State v. Munoz*, 991 S.W.2d 818, 821 (Tex.Crim.App.1999). Most of the facts relevant to Guerrero's speedy trial claim are undisputed; therefore, the primary issue in this case involves the legal significance of the facts .to his claim. *See id.*

### A. Length of Delay

 The first *Barker* factor, the length of the delay, is a triggering mechanism for analysis of the other three factors. *Barker*, 407 U.S. at 530–32, 92 S.Ct. 2182; *Munoz*, 991 S.W.2d at 821. Unless the delay is presumptively prejudicial, we need not inquire into the other *Barker* factors. *Barker*, 407 U.S. at 530, 92 S.Ct. 2182; *Munoz*, 991 S.W.2d at 821. The length of delay that will invoke such an inquiry is dependent upon the circumstances of each case. *Zamorano*, 84 S.W.3d at 648–49. However, the Supreme Court has noted "the delay that can be tolerated for an ordinary street crime is considerably less than for a serious, complex conspiracy charge." *Barker*, 407 U.S. at 531, 92 S.Ct. 2182; *Zamorano*, 84 S.W.3d at 649. If the accused demonstrates the time from accusation to trial "has crossed the threshold dividing 'ordinary' from 'presumptively prejudicial' delay, a court must then consider the extent to which that delay stretches beyond the bare minimum needed to trigger judicial examination of the claim." *Zamorano*, 84 S.W.3d at 649. Therefore, a "speedy trial analysis depends first upon whether the

delay is more than 'ordinary'; if so, the longer the delay beyond that which is ordinary, the more prejudicial that delay is to the defendant." *Id.*

The length of delay for speedy trial purposes is measured from the time the defendant is arrested or formally accused. *United States v. Marion*, 404 U.S. 307, 313, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971); *Dragoo*, 96 S.W.3d at 313. Generally, a delay of eight months is considered presumptively prejudicial, triggering further analysis of the speedy trial claim. *State v. Rangel*, 980 S.W.2d 840, 843 (Tex. App.-San Antonio 1998, no pet.). In this case, there are four separate time periods we must analyze in order to calculate the length of the delay.

### Period One

The first period to consider is that running from the date of the commission of the first offense, April 1, 1997, to the date of Guerrero's initial indictment, April 21, 1998. This is a period of approximately twelve months. Because Guerrero had no formal charges pending against him during this time period, we will not consider this period in our speedy trial computation. *See Marion*, 404 U.S. at 320, 92 S.Ct. 455.

### Period Two

The second period to consider is that running from the date of Guerrero's initial indictment, April 21, 1998, to the date when the trial court granted the State's motion to dismiss, March 27, 2000. This is a period of approximately 23 months. Because Guerrero was considered "formally accused" throughout this time period, we must consider this period in our speedy trial computation. *See id.*

### Period Three

The third period to consider is the period running from the dismissal of the first indictment, March 27, 2000, to the date of Guerrero's reindictment, August 14, 2001. This is a period of approximately 17–months. Because Guerrero had no formal charges pending against him during this time period, we will not consider this period in our speedy trial computation. *See United States v. MacDonald*, 456 U.S. 1, 9, 102 S.Ct. 1497, 71 L.Ed.2d 696 (1982) (holding the time between a good faith dismissal of criminal charges and the filing of new charges is not to be considered on speedy trial right).

### Period Four

The fourth period to consider is the period running from the date of Guerrero's re-indictment, August 14, 2001, to the date the trial court granted Guerrero's motion to dismiss, March 21, 2002. This is a period of approximately seven months. Because Guerrero was considered "formally accused" throughout this time period, we must consider this period in our speedy trial computation. *See Marion*, 404 U.S. at 320, 92 S.Ct. 455.

### Analysis

Based on the foregoing, only Periods Two and Four can be considered for purposes of computing the length of the delay. Thus, the delay in this case was an interval of approximately 30 months. This delay is sufficient to trigger a *Barker* inquiry. *See Munoz*, 991 S.W.2d at 822 (recognizing a 17–month delay is sufficient to trigger consideration of other *Barker* factors). Furthermore, the delay here stretched beyond the minimum needed to trigger the inquiry for such a relatively uncomplicated crime as indecency with a child. Consequently, this factor weighs in favor of finding a speedy trial violation.

### B. Reason for the Delay

The State bears the burden of justifying the delay. *Rangel*, 980 S.W.2d

at 843. Courts assign different weights to different reasons for a delay. *Dragoo*, 96 S.W.3d at 314. A deliberate attempt to delay a trial is weighed heavily against the State, while more neutral reasons, such as negligence or overcrowded dockets, are weighed less heavily. *Zamorano*, 84 S.W.3d at 649. "Although negligence is obviously to be weighed more lightly than deliberate intent to harm the accused's defense, it still falls on the wrong side of the divide between acceptable and unacceptable reasons for delaying a criminal prosecution once it has begun." *Doggett v. United States*, 505 U.S. 647, 657, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992). When the record is silent regarding the reason for the delay, a court may presume neither a deliberate attempt on the part of the State to prejudice the defense nor a valid reason for the delay. *Dragoo*, 96 S.W.3d at 314.

■ At the hearing on Guerrero's motion to dismiss, the State offered the trial court no reason to justify the 30–month delay in prosecuting Guerrero. The record reveals that Guerrero was indicted on April 21, 1998, but was not arrested until August 5, 1999. The record is silent as to why it took more than 15 months to arrest Guerrero.[1] On October 14, 1999, the trial court granted the State's request for a continuance. This continuance was requested by the State because: (1) a new

prosecutor had taken over the case; and (2) it had lost a video recording of Child Protective Services's interview with Guerrero's alleged victim. On December 6, 1999, approximately one week before trial was set to begin, the trial court, on its own motion, reset Guerrero's trial for March 20, 2000. On March 20, 2000, the trial court granted the State's request for another continuance and reset trial for March 27, 2000. The State requested this continuance because the prosecuting attorney had a death in his family. When the parties appeared for trial on March 27, 2000, the trial court dismissed the case without prejudice upon the State's request. The State dismissed the case because it had allegedly discovered new evidence indicating Guerrero had committed a third act of indecency with a child. On August 14, 2001, the State re-indicted Guerrero. However, Guerrero was not arrested until October 10, 2001. Once again, the record is silent as to why it took almost two months to re-arrest Guerrero.[2] Guerrero's case was finally dismissed for speedy trial violations on March 21, 2002. Because the delay in this case is largely attributable to the State or other neutral reasons, we believe this factor weighs in favor of finding a speedy trial violation.

## C. Assertion of the Right

■ The third factor that a court must consider is the defendant's assertion

1. At oral argument, the State alleged Guerrero was responsible for this delay because he failed to provide the authorities with his current address. In this case, whether Guerrero gave the authorities his current address depends upon the credibility of Guerrero. The record reveals that Guerrero had previously testified that he had in fact given the authorities his current address and phone number. Guerrero even testified that law enforcement officials had contacted him at his current address during the course of their investigation. Guerrero further testified that he did not hide from the police or leave the City of

Laredo for any extended period of time during the course of the investigation. Because Guerrero prevailed on his speedy trial claim, we defer to the trial court's implied finding that Guerrero did give the authorities his current address.

2. On appeal, the State alleges that Guerrero is responsible for this delay because he did not appear until a capias was issued for his arrest. However, there is nothing in the record to indicate that Guerrero was ever aware of his re-indictment.

of his right to a speedy trial. *Munoz*, 991 S.W.2d at 825. The defendant is responsible for asserting his right to a speedy trial. *Id.* However, if a defendant fails to assert his speedy trial right, it does not amount to a waiver of that right. *Dragoo*, 96 S.W.3d at 314. It merely makes it more difficult for the defendant to prove he was denied a speedy trial because it suggests he "did not really want a speedy trial and was not prejudiced by lack of one." *Id.*

The State contends this factor should weigh against Guerrero because his main concern was not to gain a speedy trial, but rather, to gain a dismissal. As support for its contention, the State relies on the fact that Guerrero did not specifically file a motion for speedy trial before the State moved to dismiss the first indictment. The record, however, indicates Guerrero filed several motions to dismiss before the State's dismissal. We believe these motions served as a means of alerting the State and the trial court of Guerrero's speedy trial claim.[3]

Although the Court of Criminal Appeals has noted that a defendant's speedy trial claim is potentially weakened when he raises his speedy trial claim through a motion to dismiss, we do not believe that is the case here. The court has stated:

[a]lthough a motion to dismiss notifies the State and the court of the speedy trial claim, a defendant's motivation in asking for dismissal rather than a prompt trial is clearly relevant, and may

sometimes attenuate the strength of his claim. This is not to say, however, that asking only for dismissal will result in a "waiver," while seeking a speedy trial and, in the alternative, a dismissal, would preserve the claim. In some cases, defense counsel may legitimately feel that a long delay has caused a client so much prejudice that dismissal is warranted, even if the State is belatedly ready to move promptly. Each case must turn on its own facts, and the particular relief a defendant seeks is but one fact to consider.

*Phillips v. State*, 650 S.W.2d 396, 401 (Tex. Crim.App.1983) (citations omitted). The record in this case indicates that the State lost the video recording of Child Protective Services's first interview with Guerrero's alleged victim. Upon discovering that this videotape was missing, defense counsel could have reasonably concluded that without the video, Guerrero's defense was prejudiced. Consequently, a speedy trial was no longer in Guerrero's best interest, rather, a dismissal was the appropriate remedy to seek. Given the circumstances, we believe Guerrero's speedy trial claim was not undermined because he raised his claim through a motion to dismiss. *See Zamorano*, 84 S.W.3d at 651 n. 40 (finding third *Barker* factor weighed in favor of a violation even though appellant asserted his right through a motion to dismiss). Therefore, we hold factor three weighs in favor of finding a speedy trial violation.[4]

---

3. During the 23–month period preceding the State's motion to dismiss, Guerrero did not have an opportunity to demand a speedy trial for the first 15 months of this period because he was not aware of his indictment. Therefore, we limit our inquiry to Guerrero's actions after August 5, 1999, the date Guerrero was first arrested and learned of his indictment. *See Phillips v. State*, 650 S.W.2d 396, 400 (Tex.Crim.App.1983).

4. We note that Guerrero's motion to dismiss was not the only evidence suggesting he asserted his speedy trial right as early as the first indictment. The record indicates Guerrero tried to force a speedy trial when he: (1) filed a written objection stating "[d]efendant hereby requests the trial in the above numbered and styled cause be scheduled for the earliest possible date and/or that the case be dismissed" in response to the trial court moving his trial from December 13, 1999 to

## D. Prejudice Resulting From the Delay

The final factor that a court must consider is what prejudice the defendant suffered as a result of the delay. *Dragoo,* 96 S.W.3d at 315. The prejudice to the defendant is assessed in light of the interests which the speedy trial right is designed to protect. *Munoz,* 991 S.W.2d at 826. These interests are: (1) preventing oppressive pretrial incarceration; (2) minimizing the anxiety and concern of the accused; and (3) limiting the possibility that the defense will be impaired. *Id.* Of these sub-factors, "the most serious is the last, because the inability of a defendant to adequately prepare his case skews the fairness of the entire system." *Id.* The defendant has the burden to make some showing of prejudice, although a showing of actual prejudice is not required. *Id.* When the defendant makes a prima facie showing of prejudice, the State carries the burden of proving that the defendant "suffered no serious prejudice beyond that which ensued from the ordinary and inevitable delay." *Ex parte McKenzie,* 491 S.W.2d 122, 123 (Tex.Crim.App.1973).

At the motion to dismiss hearing, Guerrero complained that the delay in this case caused him anxiety and caused his defense to be impaired. With respect to Guerrero's impaired defense complaint, Guerrero specifically argued the delay caused: (1) his memory to fade; (2) the video recording of Child Protective Services's first interview with the alleged victim to become lost; and (3) the CPS caseworker who conducted the first interview with the alleged victim, Andrea Zamora Lugo, to become unavailable.

### Anxiety & Dimming Memory

Guerrero contends he was prejudiced because he suffered anxiety as a result of the delay. However, no evidence was produced which indicated Guerrero suffered any anxiety or concern over his case. Guerrero further asserts he was prejudiced because he did not try to "preserve his recollections about the investigation." The fact that Guerrero could not remember all the events related to the investigation is not enough to show impairment of a defense. A bare assertion of dimming memories does not constitute some showing of an impairment to a defense. *Munoz,* 991 S.W.2d at 829. *Barker* requires a defendant to show that his lapses in his memory are in some way significant to the outcome of the case. *Id.* Guerrero made no such showing here.

### Unavailability of Andrea Zamora Lugo

Guerrero contends he was prejudiced because Lugo became unavailable to testify during his first prosecution. According to Guerrero, Lugo's presence is necessary because she could provide insight into whether she influenced the victim to make the statements that he did. To claim prejudice because of a missing witness, a defendant must show that: (1) the witness was unavailable at the time of trial; (2) the witness's testimony would have been relevant and material; and (3) he exercised due diligence in an attempt to locate the witness. *Clarke v. State,* 928 S.W.2d 709, 716 (Tex.App.-Fort Worth 1996, pet. ref'd).

The record indicates that Lugo was unavailable throughout the underlying proceeding. The record further indicates that Lugo's testimony was relevant and materi-

March 20, 2000; and (2) urged the trial court to continue with trial as scheduled when the State moved to dismiss the first indictment. We further note that the State does not dispute that Guerrero adequately asserted his right upon his re-indictment by filing a motion for speedy trial on November 9, 2001.

al because she was the caseworker who performed the first videotaped interview of the alleged victim. The record also indicates that despite the efforts of both the State and the defendant, Lugo could not be located.[5] Because Guerrero made a prima facie showing of prejudice, the burden was on the State to prove otherwise. The State, however, failed to present evidence indicating Guerrero suffered no serious prejudice beyond that which ensued from the ordinary and inevitable delay.

### *Lost Videotape*

Guerrero contends he was prejudiced because the State lost the video recording of CPS's first interview with the alleged victim. According to Guerrero, this tape was material to his defense because the victim made statements on the tape that are inconsistent with statements he made in a subsequent interview with CPS.[6] The State contends Guerrero failed to demonstrate a nexus between the delay and the loss of the videotape.

At the motion to dismiss hearing, prosecutor Raul Martinez testified regarding the loss of the CPS videotape. Martinez testified that the videotape was lost while in the State's possession. He also testified that several different prosecutors handled the tape before it was lost. Martinez's testimony further reveals that he could not identify the exact date when the videotape was lost, only that the tape was lost sometime after Guerrero was first indicted but before Martinez took over the case in October of 1999.

█ Where the State loses evidence useful to a defendant, a defendant's opportunity for a fair trial is clearly diminished. This is especially true when the loss occurs during a delay following the defendant's indictment. Because the State lost the videotape during the 17–month delay following Guerrero's indictment, we hold Guerrero has made some showing of prejudice regarding the loss of the video. *Cf. Deeb v. State*, 815 S.W.2d 692, 706 (Tex. Crim.App.1991) (holding loss of a witness did not prejudice the defendant because he failed to show the witness became unavailable after his indictment). Because Guerrero made a prima facie showing of prejudice, the burden was on the State to prove otherwise. The State, however, failed to present evidence indicating Guerrero suffered no serious prejudice beyond that which ensued from the ordinary and inevitable delay.

Based on the foregoing, we believe factor four weighs in favor of finding a speedy trial violation.

### D. Balancing the *Barker* Factors

We hold that all four factors weigh in favor of Guerrero. Guerrero has successfully demonstrated that the length of the delay was presumptively prejudicial, the reasons for the delay were either State negligence or neutral reasons, he promptly and sufficiently asserted his right, and he suffered some prejudice as a result of the delay. For these reasons, the judgment of the trial court is affirmed.

---

5. The State does not challenge Guerrero's diligence in trying to locate Lugo.

6. Although Guerrero did not have an opportunity to view the first video, the State provided Guerrero with a brief narrative of the tape's content. By comparing the content of the narrative with statements made by the alleged victim in a later interview, Guerrero was able to determine that the victim had made inconsistent statements regarding the alleged offenses.