

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-12-00174-CR

_____

STATE OF TEXAS, Appellant

V.

DAVID KENT SMITH, Appellee

On Appeal from the County Court at Law
Fannin County, Texas
Trial Court No. 40539

Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Chief Justice Morriss

MEMORANDUM OPINION

Nine years after David Kent Smith allegedly drove while intoxicated and caused an accident, the trial court decided that Smith had been denied his constitutional right to a speedy trial and dismissed the State's information against Smith. That dismissal is appealed by the State, which argues only the *Barker*[1] factor weighing the extent to which Smith asserted his right to a speedy trial. We affirm the trial court's ruling.

The vehicle accident happened in September 2003, leading to Smith's being charged by information with the offense of driving while intoxicated (DWI). *See* TEX. PENAL CODE ANN. § 49.04 (West Supp. 2012). The information was not filed until October 2004. Smith was tried and convicted May 23, 2006, but the trial court granted a new trial July 19, 2006. The new trial was set for August 22, 2006, but Smith moved for a continuance shortly before that trial date—saying he needed to obtain medical records incident to the accident—and the State agreed to this continuance. No subsequent trial date was scheduled, and no activity occurred until the summer of 2012.[2] According to motions and documents in the record, trial was rescheduled for September 24, 2012, but the State moved for a continuance then because of an unavailable witness. The case was reset for October 2012.

---

[1]*Barker v. Wingo*, 407 U.S. 514, 530 (1972).

[2]While there is nothing explicit in the record, such as a docket sheet notation, both parties in their briefs to the trial court implicitly acknowledge that some pretrial hearing or docket call occurred July 25, 2012; likewise, the trial court's findings of fact note that "no further action in the prosecution of this case" was taken by the State until July 25, 2012. The defendant did not oppose a reset on that date.

On October 1, 2012, Smith filed his motion to set aside the information, alleging violation of his right to a speedy trial. The trial court dismissed the State's information, and this appeal followed.

The Sixth Amendment to the United States Constitution guarantees the right to a speedy trial. This right protects the accused from anxiety and concern that accompanies a public accusation, seeks to avoid impairment to a defense, and assures freedom from oppressive pretrial incarceration. *Cantu v. State*, 253 S.W.3d 273, 280 (Tex. Crim. App. 2008) (citing *Barker*, 407 U.S. at 532).

The right to a speedy trial cannot be quantified in days or months. *Barker*, 407 U.S. at 523. Thus, we review federal speedy-trial claims case-by-case by weighing and balancing the *Barker* factors. *Cantu*, 253 S.W.3d at 280. These factors include: (1) length of the delay, (2) reason for the delay, (3) assertion of the right, and (4) prejudice to the accused. *Id.*; *Barker*, 407 U.S. at 530. "[T]he greater the State's bad faith or official negligence and the longer its actions delay a trial, the less a defendant must show actual prejudice or prove diligence in asserting his right to a speedy trial." *Cantu*, 253 S.W.3d at 280–81. No one factor is determinative, and all factors must be considered together along with relevant circumstances on a case-by-case basis. *Id.* at 281.

In performing this analysis, we apply a bifurcated standard of review: an abuse of discretion standard for the factual portions and a de novo standard for the legal aspects. *Id.* at 282 (citing *Zamorano v. State*, 84 S.W.3d 643, 648 (Tex. Crim. App. 2002)). Review of the *Barker* factors involves both legal and factual determinations, but "[t]he balancing test as a

3

whole . . . is a purely legal question." *Id.* (citing *Zamorano*, 84 S.W.3d at 648 n.19). Under an abuse of discretion standard, we defer to the trial court's resolution of facts and reasonable inferences drawn therefrom and review the evidence in a light most favorable to the ruling. *Id.*

Ordinarily, in an appeal of a trial court's ruling on a speedy-trial claim, we would review the four *Barker* factors, according to the standard of review cited above, and weigh those factors. The State, however, has specifically limited its appeal to challenging the trial court's finding on Smith's assertion of his right to a speedy trial. We therefore focus on that factor. *See Hailey v. State*, 87 S.W.3d 118 (Tex. Crim. App. 2002) (cannot reverse case on theory not presented to trial court or raised on appeal); *Rochelle v. State*, 791 S.W.2d 121, 124–25 (Tex. Crim. App. 1990) (matters to be addressed on appeal must be raised in briefing); *see also Sherman v. State*, 12 S.W.3d 489, 494 (Tex. App.—Dallas 1999, no pet.) (declining to address matter not raised in original brief or within scope of ordered post-submission briefing). Here, the State's brief complains only of the trial court's assessment of Smith's assertion of his right to a speedy trial. The State does not request review of the other *Barker* factors.

The trial court made the following finding on Smith's assertion of his right to a speedy trial:

> I find the Defendant has no duty to bring himself to trial and the Defendant's failure to demand a trial did not waive his speedy trial rights. The timing of the Defendant's asserting his rights to a speedy trial is not dispositive since this is a fundamental constitutional right[3] . . . .

---

[3]As to this factor, and the other *Barker* factors addressed in its order, the trial court did not articulate whether each factor weighed in favor of either Smith or the State, but it is clear it weighed each factor in Smith's favor, as it found the length of the delay to be presumptively prejudicial, the State offered no valid reason for the delay, and the defendant made a prima facie showing of prejudice caused by the delay.

4

Following the grant of a new trial in 2006, Smith filed one motion for continuance, which was agreed to by the State. The motion proposed a new trial date, September 20, 2006, which would have been a little more than a month after the continuance was requested.[4] The matter was apparently never set for trial again until the summer of 2012,[5] and Smith did not assert that his speedy-trial rights were violated until October 1, 2012. Smith presented that motion as one to set aside the information on grounds he had been denied his right to a speedy trial. In neither the motion nor the subsequent hearing did Smith ever suggest he was ready for trial or ask that a speedy trial be conducted. This suggests a desire for no trial at all, rather than a speedy trial, and generally weakens a defendant's speedy-trial claim. *Cantu*, 253 S.W.3d at 283. Of course, it is the duty of the State, not the defendant, to bring the defendant to trial. *Zamorano*, 84 S.W.3d at 651 (citing *Barker*, 407 U.S. at 527).

"Repeated requests for a speedy trial weigh heavily in favor of the defendant, while the failure to make such requests supports an inference that the defendant does not really want a trial, he wants only a dismissal." *Cantu*, 253 S.W.3d at 283 (citing *Barker*, 407 U.S. at 534–36). Where a defendant "fails to first seek a speedy trial before seeking dismissal of the charges, he

---

[4]The request for continuance stated as grounds that Smith needed to obtain medical records; however, the prejudice claimed by Smith in 2012, in the speedy-trial proceedings, was that Smith could not find the witnesses from Smith's hospitalization after the 2003 incident or, if those witnesses were located, their memories would have suffered. Smith also claimed harm in that he no longer had access to the vehicle involved in the accident (Smith suggested mechanical difficulty could have been responsible for the accident, as opposed to intoxication).

[5]After the 2006 order granting Smith's continuance, the next document in the clerk's record is the State's motion for continuance dated September 17, 2012, which states the matter was due to be tried September 24, 2012. The State's motion said its law enforcement witness was unavailable September 24 and asked that the matter be re-set with a pretrial date of October 4, 2012.

should provide cogent reasons for this failure." *Id.*[6] Smith provided no reasons for not making an earlier assertion of his speedy-trial rights, either in the trial court record or on appeal.

Smith cites *Zamorano* and *State v. Guerrero*, 110 S.W.3d 155 (Tex. App.—San Antonio 2003, no pet.), as authority that he did not necessarily seek to avoid trial outright. In *Zamorano*, the defendant filed his motion to set aside on speedy-trial grounds more than two and one-half years after his arrest. The trial court did not hear the motion for another two months and denied the motion. Two months later, Zamorano filed a motion to reconsider that ruling, but the court did not hear that motion for another ten months. *Zamorano*, 84 S.W.3d at 647. Finding that, despite a tardy initial motion for relief, Zamorano evidenced "persistence" by filing a motion to reconsider, and nothing in the case indicated any "affirmative desire for any delay," the Texas Court of Criminal Appeals found this factor to weigh in Zamorano's favor. *Id.* at 652.

In *Guerrero*, the defendant was not arrested until almost sixteen months after indictment, which was returned in April 1998. One month later, he filed a motion to dismiss because of delay after the indictment. *Guerrero*, 110 S.W.3d at 157. Two months later, he moved the trial court to reconsider the denial of the motion to dismiss. The trial court did not rule immediately, but did re-set the case for trial more than three months later. Guerrero filed a written objection asking that the case be set as soon as possible or dismissed. When the trial date arrived, the trial court denied Guerrero's motion to reconsider and granted the State a continuance. A week later (in March 2000), the State moved to dismiss based on newly discovered evidence, and the trial

---

[6]Cantu was not formally charged until about sixteen months after his arrest for DWI. He filed his motion to dismiss on speedy trial grounds two months after the information was filed. The Texas Court of Criminal Appeals affirmed the trial court's denial of relief. The Texas Court of Criminal Appeals pointed out that, even though Cantu had not been formally charged, there were other avenues by which an accused may assert his right to a speedy trial. *See Cantu*, 253 S.W.3d at 283–84.

6

court immediately granted that motion, dismissing the case without prejudice. *Id.* at 157–58. The State re-indicted Guerrero in August 2001, but did not re-arrest him until October 2001. Guerrero filed a motion for speedy trial and a motion to dismiss, the latter of which was granted in March 2002. *Id*. at 158.

The San Antonio court in *Guerrero* pointed out that, while a defendant's speedy-trial claim may be weakened when it is presented through a motion to dismiss, Guerrero's case was different: the record in *Guerrero* indicated that the State lost a video-recorded interview of one of the alleged sexual abuse (indecency by contact) victims. "On discovering that this videotape was missing, defense counsel could have reasonably concluded that without the video, Guerrero's defense was prejudiced." *Id.* at 161. Thus, a speedy trial was no longer in Guerrero's best interest, and a dismissal was the appropriate remedy. *Id*.

Smith analogizes his situation to that in *Guerrero*, in that Smith claims he could not find witnesses and no longer had access to the vehicle involved in the alleged offense. Smith's 2006 motion for continuance—filed three months after his first trial and one month after his motion for new trial was granted—was specifically made on the assertion he needed to obtain medical records. In Smith's motion to dismiss on speedy-trial grounds, his attorney complained she either could not get hospital employees to return her telephone calls, or the persons she needed to interview were no longer employed by the hospital in question. Smith sought a continuance in 2006 to prepare his defense.[7] Six years later, with no accounting for whether he worked to

---

[7]The 2006 motion for continuance stated, in pertinent part, "Attorney for Defense has not received necessary medical records for this case from Baylor Hospital."

prepare his defense in the interim, he sought dismissal claiming he could not locate witnesses from the hospital and that the vehicle involved in the 2003 accident was no longer available to him.[8]  This case is distinguishable from *Guerrero*.  We also contrast Smith's case with *Zamorano*, where the Texas Court of Criminal Appeals noted there was no evidence of an "affirmative desire for delay."  *Zamorano*, 84 S.W.3d at 652.  There is some evidence of a desire for delay on Smith's part during the extensive history of this case.

We review de novo Smith's assertion of his right to a speedy trial and find that, under the circumstances of this case, his motion for dismissal on speedy-trial grounds evinced more a desire for dismissal than a speedy trial.  While the trial court was correct in stating that Smith does not bear the duty of bringing himself to trial, the defendant does bear the duty to assert his right to a speedy trial.  Whether Smith hoped, during the six years of unexplained inactivity, that his case had magically dropped off the trial court's docket or whether he had some other reason for not requesting a speedy trial at an earlier date, his inactivity decidedly weakens his claim. We find this factor weighs against Smith.  *See Shaw v. State*, 117 S.W.3d 883, 890 (Tex. Crim. App. 2003).[9]

---

[8]To show prejudice based on a purported inability to locate witnesses, a defendant must establish "that the witnesses are unavailable, that their testimony might be material and relevant to his case, and that he exercised due diligence in his attempt to find them and produce them for trial."  *Harris v. State*, 489 S.W.2d 303, 308 (Tex. Crim. App. 1973). Smith presented no evidence at the hearing, only the argument of counsel.  We have found no affidavits in the record which could constitute evidence of his efforts to locate witnesses.

[9]Shaw did not assert his speedy-trial rights until twenty-nine months after his first trial (which ended with a hung jury); he did not seek a hearing on his speedy-trial motion until six months after that.  *Shaw*, 117 S.W.3d at 890. Finding Shaw "quietly acquiesced" to most of the lengthy delay, the Texas Court of Criminal Appeals weighed this factor "very heavily against finding a violation of his right to a speedy trial."  *Id*.  We weigh this factor against Smith, but do not use the term "heavily," as *Shaw* did, allowing for the fact Smith's delay was more than twice as long as that in *Shaw*, and the trial court did find specifically that the delay had adversely affected Smith's defense.

We conduct a de novo balancing test of the *Barker* factors. *Zamorano*, 84 S.W.3d at 648 n.19 (quoting *Johnson v. State*, 954 S.W.2d 770, 771 (Tex. Crim. App. 1997)) ("The balancing test as a whole . . . is a purely legal question. Legal questions are reviewed *de novo*."). The conduct of both the State and the defendant must be weighed when balancing the four *Barker* factors. *Barker*, 407 U.S. at 530; *Dragoo v. State*, 96 S.W.3d 308, 313 (Tex. Crim. App. 2003). Importantly, no single factor is necessary or sufficient to find a speedy-trial violation. *Barker*, 407 U.S. at 530; *Dragoo*, 96 S.W.3d at 313. Because the State here has asked us only to review the trial court's finding on Smith's assertion of his speedy-trial right, we will incorporate the trial court's findings on the length of delay, reasons for delay, and prejudice to Smith, and weigh those along with our finding that, under the circumstances of this case, Smith's behavior relative to the late assertion of his right to a speedy trial weighed against Smith.

The trial court found the delay from August 2006 to October 2012 was prejudicial and warranted a speedy-trial analysis, and the State offered no valid reason for this strikingly long delay. These factors weigh against the State and in Smith's favor. *Cf. Dragoo*, 96 S.W.3d at 316 (three and one-half year delay "excessive;" where State offered no explanation for delay, these two factors weighed in appellant's favor). As stated above, we find the circumstances under which Smith asserted his right to a speedy trial (or more accurately, Smith's assertion of a right to dismissal on speedy-trial grounds) weighed against Smith. This brings us to the factor of prejudice.

---

Nevertheless, weighing is a matter of degrees; the analysis is fluid. The *Barker* factors "are related . . . and must be considered together with such other circumstances as may be relevant." *Barker*, 407 U.S. at 533.

The trial court found Smith made a prima facie case that the delay prejudiced his ability to present a defense. In reaching this conclusion, the court pointed to "lapsed memories"; the difficulty in obtaining fact witnesses; and Smith's unavailable car, a "critical piece of evidence." The trial court's finding that Smith made a prima facie showing of prejudice shifted the burden to the State to show that the defendant suffered "no serious prejudice beyond that which ensued from the ordinary and inevitable delay." *State v. Munoz*, 991 S.W.2d 818, 826 (Tex. Crim. App. 1999); *Puckett v. State*, 279 S.W.3d 434, 437 (Tex. App.—Texarkana 2009, no pet.). The State offered no evidence at the speedy-trial hearing to rebut the presumed prejudice caused by the lengthy delay. Granted, Smith presented no testimony either, but he did secure the trial court's finding of prima facie prejudice, and the State has conceded the existence of prejudice in its briefing. The factor of prejudice weighs in Smith's favor.

Because the *Barker* factors predominate in favor of Smith, we affirm the trial court's judgment.

Josh R. Morriss, III
Chief Justice

Date Submitted:     January 22, 2013
Date Decided:       February 20, 2013

Do Not Publish