

# Fourth Court of Appeals
## San Antonio, Texas

### OPINION

No. 04-11-00405-CR

Lionel **GONZALES**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 379th Judicial District Court, Bexar County, Texas
Trial Court No. 2004CR1992
Honorable Ron Rangel, Judge Presiding

### OPINION ON REMAND

Opinion by:    Rebeca C. Martinez, Justice

Sitting:    Karen Angelini, Justice
Sandee Bryan Marion, Justice
Rebeca C. Martinez, Justice

Delivered and Filed:  August 21, 2013

REVERSED AND RENDERED

Lionel Gonzales was charged by indictment on March 17, 2004 with injury to a child and indecency with a child. He was not arrested until April 21, 2010, and soon thereafter he filed a motion to dismiss for lack of a speedy trial. The trial court denied Gonzales's pre-trial motion to dismiss for lack of a speedy trial. Gonzales pled no contest and was granted deferred adjudication; he was placed on community supervision for a period of five years. Gonzales subsequently appealed the trial court's denial of his motion to dismiss for lack of a speedy trial. We affirmed

the trial court's judgment, holding that Gonzales failed to demonstrate how he was prejudiced by the State's delay. *See Gonzales v. State*, No. 04-11-00405-CR, 2012 WL 1364981 (Tex. App.—San Antonio Apr. 18, 2012) (mem. op., not designated for publication). Thereafter, the Court of Criminal Appeals reversed our judgment and remanded the case to this court, holding that we improperly placed the burden on Gonzales to demonstrate prejudice and that, because of the lengthy delay between Gonzales's indictment and his arrest, Gonzales was presumptively prejudiced. *Gonzales v. State*, No. PD-0724-12, 2013 WL 765575, at *1 (Tex. Crim. App. Feb. 27, 2013) (not designated for publication). The Court of Criminal Appeals therefore instructed us to review the record "not for proof of prejudice but rather the rebuttal or extenuation of prejudice." *Id.* (citing *Doggett v. United States*, 505 U.S. 647, 658 (1992)). On remand, we reverse the judgment of the trial court, and render judgment dismissing the prosecution with prejudice.

## BACKGROUND

On March 17, 2004, Gonzales was charged by indictment with one count of injury to a child and one count of indecency with a child stemming from an incident alleged to have occurred on November 27, 2002. Gonzales was not arrested until April 21, 2010. On May 25, 2010, Gonzales filed a motion to dismiss for lack of speedy trial, arguing that his speedy trial rights under the federal and state constitutions were violated because of the over six-year delay between indictment and arrest; Gonzales argued that his defense was impaired because witnesses' memories were faded due to the passage of time.

According to a police statement provided by M.C., the complainant, she met Gonzales through a telephone chat line. On November 26, 2002, she agreed to allow Gonzales to pick her up and take her to his house. Although M.C. was 14 years old, she told Gonzales that she was 16 years old. Gonzales told her that he was 17 years old; he was actually 21. Gonzales picked M.C. up in a black Cadillac Escalade driven by an older man whom M.C. later learned was Gonzales's

father. Once at Gonzales's house, M.C. and Gonzales went upstairs to his bedroom. They smoked marijuana. Gonzales tried to kiss and touch M.C., and she pushed him away. He told her he was not going to let her go home unless he got "something," which M.C. took to mean that Gonzales wanted to have sex. Gonzales grabbed M.C. and threw her on the bed. When she refused his advances, Gonzales became angry and punched M.C. in the mouth. She began to yell, and Gonzales covered her mouth with his hands. At that time, Gonzales's parents entered the room. Gonzales's mother gave her a green towel to stop the bleeding on her mouth. M.C. ran downstairs and saw another older man. Gonzales's father asked M.C. why Gonzales had hit her, and she told him that he was trying to kiss her and feel on her. Gonzales's father and brother drove M.C. home and told her not to tell anyone about what had happened. M.C. told her mother, who called the police.

Gonzales's mother gave a statement to police on August 18, 2003. She recalled an incident the prior November where Gonzales and his father picked up a girl. When they returned, Gonzales and the girl went upstairs while she and her cousin, Manuel, stayed in the kitchen; her husband went to take a shower. Within a few seconds, she heard yelling coming from Gonzales's room. She and Manuel ran upstairs. She saw that the girl was holding her mouth, and it looked like there was blood coming from the girl's nose. Gonzales told his mother that the girl had thrown a cordless telephone at him, and there was a bruise on his cheek. Mrs. Gonzales stated that her son later had a black eye. Everyone went downstairs, and Mrs. Gonzales saw that Manuel had given the girl a washcloth to hold on her mouth. Mr. Gonzales and his other son, "Roger, Jr.," drove the girl home.

On July 2, 2010, the trial court held a hearing on Gonzales's motion to dismiss for lack of a speedy trial. The only witnesses were Gonzales and his mother. Gonzales testified that he had no recollection of the evening in question and that he did not even recognize the complainant's name. Gonzales admitted that he was placed on probation for a DWI offense in 2001 and was

aware that a motion to revoke was pending since 2003 due to his failure to report; he agreed that he remained a fugitive on the DWI until he was arrested on April 21, 2010. He acknowledged that he had not renewed his driver's license since 2007, but denied that he failed to do so in an attempt to hide from authorities.

Gonzales's mother testified that Gonzales had lived with her and her husband his entire life, and at the same address for the past eleven years. She and her husband were at home on the evening in question. Her husband was not available to testify because he had suffered three heart attacks and was not well. Mrs. Gonzales testified that she "vaguely" recalled the incident giving rise to the criminal charge against her son. In August 2003, she and her husband were interviewed by the police concerning the incident. Mrs. Gonzales did not know that a case was going to be filed against her son; she was only told by the detective that he was gathering information to see if, in fact, he had a case. She and her husband never heard anything further from the police. Mrs. Gonzales admitted signing a statement in which she said she saw blood coming from the complainant's face, but testified that she was tricked into signing it and that the detective "didn't write it right." In court, Mrs. Gonzales denied seeing any blood, and instead stated that she saw the complainant covering her face with a bent elbow. After reading her statement, she recalled some of the events that occurred on the evening in question. She remembered that a girl and her son were both in the house that night, and agreed that there were some facts that she could testify to at trial. She also stated that, apart from her sworn statement to police, she did not have any independent recollection of what happened in November 2002, and that she did not see anything that would substantiate the charge against her son.

Ultimately, the trial court denied the motion to dismiss for lack of a speedy trial. The trial court issued findings of fact and conclusions of law in which it concluded that the first two factors

of the *Barker*[1] test—the length of the delay and the reason for the delay—weighed in Gonzales's favor. As to the third factor—the assertion of the right to speedy trial—, the trial court concluded that at no time during the six-year delay between indictment and arrest did Gonzales assert his right to a speedy trial. The trial court further concluded that because Gonzales allowed his driver's license to expire and because he attempted to evade arrest on April 21, 2010, Gonzales "had some notion of the outstanding charges [against him] and used the State's tardiness to his own advantage." Additionally, the trial court concluded that Gonzales was aware that officers were investigating the circumstances surrounding the incident because he would have discussed it with his parents, with whom he lived, and because he testified that he thought "the cops would come and talk [to him] if they had any issues." Finally, as to the fourth factor—prejudice caused by the delay—, the trial court concluded that Gonzales was not prejudiced by the delay because he "offered up no facts or evidence other than very unpersuasive testimony of a faded memory that his defense is somehow impaired." In weighing the *Barker* factors, the trial court ultimately concluded that Gonzales was not denied his right to a speedy trial, and denied the motion to dismiss.

**DISCUSSION**

### *Right to Speedy Trial*

The Sixth Amendment to the United States Constitution guarantees the accused's right to a speedy trial. *Zamorano v. State*, 84 S.W.3d 643, 647 (Tex. Crim. App. 2002); *Orand v. State*, 254 S.W.3d 560, 565 (Tex. App.—Fort Worth 2008, pet. ref'd). Gonzales argues that he was denied his right to a speedy trial under the federal and state constitutions. *See* U.S. CONST. amend. VI, XIV; TEX. CONST. art. I, § 10; *see State v. Rangel*, 980 S.W.2d 840, 843 (Tex. App.—San

---

[1] *Barker v. Wingo*, 407 U.S. 514, 530 (1972).

Antonio 1998, no pet.) (speedy trial inquiry is the same under both United States and Texas constitutions). In determining whether a defendant's right to a speedy trial has been violated, we weigh and balance four factors: (1) length of the delay; (2) reasons for the delay; (3) assertion of the right; and (4) prejudice to the defendant resulting from the delay. *See Barker v. Wingo*, 407 U.S. 514, 530 (1972) (creating balancing test for reviewing speedy trial claims under federal constitution); *Cantu v. State*, 253 S.W.3d 273, 280 n.16 (Tex. Crim. App. 2008) (although speedy trial right under Texas Constitution exists independently of federal guarantee, claims of denial of State speedy trial right are analyzed under same four *Barker* factors); *see also State v. Jones*, 168 S.W.3d 339, 346 (Tex. App.—Dallas 2005, pet. ref'd) (applying *Barker* factors to motion to dismiss, rather than motion for speedy trial). Once the *Barker* test is triggered, we analyze the speedy trial claim by first weighing the strength of the *Barker* factors and then balancing their relative weights in light of the conduct of both the prosecution and the defendant. *Cantu*, 253 S.W.3d at 281. None of the *Barker* factors is a necessary or sufficient condition to finding a speedy trial violation. *Id.* Rather, the factors are related and should be evaluated in conjunction with any other relevant considerations. *Id.*

***Standard of Review***

We apply a bifurcated standard of review when reviewing a trial court's decision on a speedy trial claim. *State v. Munoz*, 991 S .W.2d 818, 821 (Tex. Crim. App. 1999). We review the trial court's determination of historical facts under an abuse of discretion standard, while we review *de novo* the trial court's application of the law to the facts. *Id.* When, as here, the defendant does not prevail on a speedy trial claim, we presume the trial court resolved any disputed fact issues in favor of the State, and we defer to the implied findings of fact supported by the record. *Zamorano*, 84 S.W.3d at 648.

*Analysis of the* **Barker** *Factors*

    **1.** *Length of the Delay*

    The length of the delay is the triggering mechanism for an analysis under *Barker. Barker*, 407 U.S. at 530. The length of the delay is measured from the time the defendant is arrested or formally accused. *See Harris v. State*, 827 S.W.2d 949, 956 (Tex. Crim. App. 1992). However, a delay between indictment and arrest may also be considered. *Doggett*, 505 U.S. at 652 ("extraordinary 8 1/2 year lag between Doggett's indictment and arrest clearly suffices to trigger the speedy trial enquiry"). Texas courts have generally held that a delay of eight months or more is "presumptively prejudicial" and will trigger a speedy trial analysis. *See Zamorano*, 84 S.W.3d at 649 n.26; *see also Orand*, 254 S.W.3d at 566 (quoting *Doggett*, 505 U.S. at 652 n.1) ("Depending on the nature of the charges, a postaccusation delay of about one year is 'presumptively prejudicial.'").

    Here, over six years elapsed between Gonzales's indictment and his arrest. The State concedes, and we agree, that this delay is sufficiently lengthy to trigger a speedy trial analysis under *Barker.* We conclude this factor must weigh heavily against the State.

    **2.** *Reason for the Delay*

    Upon a finding that a presumptively prejudicial delay has occurred, the State bears the initial burden of justifying the delay. *Emery v. State*, 881 S.W.2d 702, 708 (Tex. Crim. App. 1994); *Rangel*, 980 S.W.2d at 843. Different weights are assigned to different reasons for a delay. *Munoz*, 991 S.W.2d at 822. A deliberate attempt to delay a trial is weighed heavily against the State, while more neutral reasons such as negligence or overcrowded dockets are weighed against the State, but less heavily. *Id.* If the record is silent regarding the reason for the delay, it weighs against the State, but not heavily because we do not presume either a deliberate attempt by the

State to prejudice the defense or a valid reason for the delay. *Dragoo v. State*, 96 S.W.3d 308, 314 (Tex. Crim. App. 2003); *Zamorano*, 84 S.W.3d at 649–50.

Here, the trial court found that no explanation was offered by the State as to why it took six years to return the arrest warrant. The record supports the trial court's finding in that the State presented no evidence to explain the delay in executing the arrest warrant when Gonzales's address was known at all relevant times. Gonzales testified he lived in his parents' home for the last eleven years. Although there is nothing in the record to indicate the delay between indictment and arrest was anything but negligence on the State's part, the weight assigned to governmental negligence compounds over time as the presumption of evidentiary prejudice grows. *See Doggett*, 505 U.S. at 657; *Orand*, 254 S.W.3d at 567 (eleven-year, eight-month delay weighed "very, very heavily" against the State where no explanation was offered for delay between indictment and arrest). Thus, given the absence of any explanation for the six-year delay, we conclude that this factor weighs heavily against the State.

### 3. *Assertion of Right to Speedy Trial*

The third *Barker* factor that a trial court must consider is the defendant's assertion of his right to a speedy trial. *Barker*, 407 U.S. at 531; *Munoz*, 991 S.W.2d at 825. A defendant is responsible for asserting or demanding his right to a speedy trial. *Munoz*, 991 S.W.2d at 825. A lengthy delay or lack of persistence in asserting the right attenuates a speedy trial claim. *Russell v. State*, 90 S.W.3d 865, 873 (Tex. App.—San Antonio 2002, pet. ref'd). Similarly, a defendant's request for dismissal rather than a prompt trial setting may attenuate the strength of his speedy trial complaint. *Rangel*, 980 S.W.2d at 844.

In this case, Gonzales stated he was not aware of the indictment until after his arrest on April 21, 2010. On May 25, 2010, he filed a motion to dismiss seeking dismissal of the indictment. "This fact potentially weakens [defendant's] case, because 'a dismissal instead of a speedy trial

weakens [a speedy trial] claim because it shows a desire to have no trial instead of a speedy trial.'" *Jones*, 168 S.W.3d at 348 (quoting *Zamorano*, 84 S.W.3d at 651 n.40). However, "[i]n some cases, defense counsel may legitimately feel that a long delay has caused a client so much prejudice that dismissal is warranted, even if the State is belatedly ready to move promptly." *State v. Guerrero*, 110 S.W.3d 155, 161 (Tex. App.—San Antonio 2003, no pet.) (quoting *Phillips v. State*, 650 S.W.2d 396, 401 (Tex. Crim. App. 1983)). Given Gonzales's assertion that his defense would be impaired due to the six-year delay present in this case, we do not believe his speedy trial claim is undermined solely because he raised it through a motion to dismiss. *See Zamorano*, 84 S.W.3d at 651 n.40 (motion to dismiss may be a means of alerting the trial court and the State to the delay and appellant's lack of acquiescence to it, and not necessarily an attempt to escape trial completely); *Guerrero*, 110 S.W.3d at 161 (holding dismissal was appropriate remedy to seek where speedy trial was no longer in appellant's best interest due to lost evidence).

Gonzales's first opportunity to assert his right to a speedy trial was immediately following his arrest in April 2010. Prior to that time, Gonzales had no notice that he had been indicted. The State suggests that because Gonzales knew the incident was under investigation, he should have known he would be prosecuted and therefore should have come forward to assert his right to a speedy trial. That argument, however, is unmeritorious. *See Guajardo v. State*, 999 S.W.2d 566, 570 (Tex. App.—Houston [14th Dist.] 1999, pet. ref'd) (rejecting State's argument that appellant should have known she would be prosecuted and concluding third *Barker* factor weighed heavily in favor of appellant where appellant filed motion to dismiss two months after being arrested and State had waited five years to arrest appellant); *see also Barker*, 407 U.S. at 527 (defendant has no duty to bring himself to trial). Considering that the State waited over six years after indictment to arrest Gonzales, his assertion of his right to a speedy trial one month after being arrested is more than timely. Therefore, this third *Barker* factor weighs in favor of Gonzales.

**4.** *Prejudice Caused by the Delay*

Because "pretrial delay is often both inevitable and wholly justifiable," the fourth *Barker* factor examines whether and to what extent the delay has prejudiced the defendant. *Cantu*, 253 S.W.3d at 285 (quoting *Doggett*, 505 U.S. at 656 and citing *Barker*, 407 U.S. at 532). Proof of actual prejudice, however, is not required in situations where the delay is excessive, because such a delay "presumptively compromises the reliability of a trial in ways that neither party can prove or even identify." *Shaw v. State*, 117 S.W.3d 883, 890 (Tex. Crim. App. 2003) (citing *Doggett*, 505 U.S. at 655). Given the six-year delay present in this case, we must presume the excessive delay adversely affected Gonzales's ability to defend himself. *See Doggett*, 505 U.S. at 655 (holding that delay of eight and one-half years between indictment and arrest was presumptively prejudicial); *Guajardo*, 999 S.W.2d at 570 (holding that nearly five-year delay attributable to the State was presumptively prejudicial); *see also Gonzales*, 2013 WL 765575, at *1 (six-year delay between Gonzales's indictment and his arrest presumptively compromised the reliability of his trial).

A defendant who has made a prima facie showing of prejudice will be entitled to relief unless the presumption of prejudice is (1) persuasively rebutted by the State or (2) extenuated by the defendant's acquiescence in the delay. *Doggett*, 505 U.S. at 658; *Gonzales*, 2013 WL 765575, at *1. We have already concluded that Gonzales did not acquiesce in the delay because, as discussed above, he asserted his rights once he was aware of the indictment against him. *See United States v. Molina-Solorio*, 577 F.3d 300, 307 (5th Cir. 2009) (prejudice not extenuated by defendant's acquiescence where defendant asserted right to speedy trial once he was aware of pending charge). Therefore, we must review the record to determine whether the Sate rebutted the presumptive prejudice caused by the six-year delay.

At the hearing on the motion to dismiss, Gonzales claimed that his defense was impaired by faded memories, including his own and his parents'. He claimed that his mother had no independent recollection of the events giving rise to the allegations in the indictment and that his father, who had suffered a third heart attack since the indictment was filed, was too ill to testify. On appeal, the State contends that it rebutted these claims of prejudice by (1) convincing the trial court that Gonzales's and his mother's testimony about their memory loss was not credible and (2) affirmatively demonstrating through cross-examination that Mrs. Gonzales did, in fact, have a memory of the events giving rise to the allegations in the indictment and, therefore, would be able to assist in her son's defense. The State did not, however, contradict the claim that Gonzales's father was unavailable to testify at trial. Gonzales's mother testified that her husband, who drove the complainant home after the alleged assault, was in poor health and had memory loss after suffering his third heart attack since the indictment was filed in 2004. Beyond its cross-examination of Gonzales and his mother, the State offered no evidence to controvert the claim of the father's unavailability.

Additionally, although the State contends it convinced the trial court that Gonzales's representations of memory loss were not credible, such an argument fails to satisfy the State's burden to rebut the presumed prejudice in favor of Gonzales. While we acknowledge that attempting to prove a negative is difficult, the State is nonetheless required to rebut or extenuate the presumption of prejudice. *See Gonzales*, 2013 WL 765575, at *1. Gonzales was not required to show he was unable to adequately prepare for his defense, but rather, the State was required to show that his defense was unimpaired despite the lengthy delay. *See Doggett*, 505 U.S. at 654 n.4. The question before this Court is whether the State satisfied its burden to persuasively rebut the presumption of prejudice by showing no "serious" impairment to Gonzales's defense as a result of the delay. *See Munoz*, 991 S.W.2d at 826. We cannot agree that the State has met its burden here.

Because the State has failed to persuasively rebut the presumption of prejudice, we conclude the fourth *Barker* factor weighs in favor of Gonzales. *See Pierce v. State*, 921 S.W.2d 291, 296 (Tex. App.—Corpus Christi 1996, no pet.) (holding State failed to rebut presumption of prejudice).

### *Balancing the* Barker *Factors*

All four of the *Barker* factors weigh in Gonzales's favor. The six-year delay is presumptively prejudicial and stretches far beyond the "bare minimum" previously recognized by this Court. *See Guerrero*, 110 S.W.3d at 159 (citing *Rangel*, 980 S.W.2d at 843). The record is silent on the reasons for the delay, and due to the sizeable length of the delay in this case, this factor weighs heavily against the State. *See Doggett*, 505 U.S. at 657 (the longer the delay due to official negligence, the less tolerable the delay becomes); *Orand*, 254 S.W.3d at 571 (lengthy delay weighs heavily against the State, even where no bad faith is shown). After he was finally arrested, Gonzales promptly asserted his right to a speedy trial. Finally, as to prejudice, we have concluded that the State failed to rebut the presumption that Gonzales's defense was impaired. We therefore hold the trial court erred in denying Gonzales's motion to dismiss for lack of a speedy trial and render judgment dismissing the prosecution with prejudice. *See Barker*, 407 U.S. at 522; *Cathey v. State*, No. 04-04-00501-CR, 2005 WL 3295748, at *5 (Tex. App.—San Antonio Dec. 7, 2005, no pet.) (mem. op., not designated for publication).

Rebeca C. Martinez, Justice

Publish